[Civ. No. 15480.   First Dist., Div. One.   Jan. 29, 1954.]

MORTON L. SILVERS, as Executor, etc., Appellant, v. MILEY B. WESSON, Respondent.

Philander Brooks Beadle and Morton L. Silvers for Appellant.

Peart, Baraty & Hassard, George A. Smith and Alan Bonnington for Respondent.

WOOD (Fred B.), J.—Alfred J. Byrnes, plaintiff, appealed from the order which granted a new trial after entry of judgment in his favor upon a verdict for $30,000 in this action

against Miley B. Wesson, physician and surgeon, on account of injuries allegedly caused by negligence of the defendant in the care and treatment of the plaintiff.

The order for new trial stated that it was granted "upon the ground of the insufficiency of the evidence to justify the verdict, in that there is not sufficient evidence in the record that defendant's negligence was a proximate cause of the damage alleged by plaintiff."

The question was whether or not defendant's alleged negligent treatment of plaintiff for prostate gland trouble, over a two-year period commencing in June, 1947, was a proximate cause of cancer of the bladder, discovered at the end of this two-year period.

The issue was posed by the allegations of the complaint that "defendants[1] did thereafter [June 2, 1947] so carelessly and negligently diagnose, prescribe for and treat plaintiff as to, and *they did, permit an incipient tumor* in the bladder *to remain undetected and untreated* until on or about June 25, 1949; *that as a proximate result* of said carelessness and negligence of defendants and each of them, said tumor *developed* prior to June 25, 1949 *into a cancer of the bladder, and plaintiff was caused to, and he now does, suffer from an incurable cancer of the bladder.*" (Emphasis added.)

Appellant[2] claims (1) that there was no conflict of evidence on the issue of proximate cause and that the only inference which can be drawn from the evidence supports the jury's implied finding that defendant's negligence was a proximate cause of plaintiff's damage, and (2) that the trial court based its order for new trial upon an erroneous concept of the kind of proof required under the issue of proximate cause in a malpractice action.

▮ (1) *Appellant's claim that it appears as a matter of law that defendant's negligence was a proximate cause* is not supported by the record.

Plaintiff first consulted a certain physician who upon giving plaintiff a cystoscopic examination informed him he had an enlarged prostate gland and advised an operation. Plaintiff then went to defendant for treatment, stating he wanted to avoid surgery if possible. Defendant undertook to and did treat plaintiff for a period of two years before making another

---

[1]The only defendants other than Wesson were several fictitiously named defendants who did not enter an appearance.

[2]Upon plaintiff's decease, after the trial, the executor of his estate, Morton L. Silvers, was substituted for him as plaintiff and appellant.

cystoscopic examination, and thereupon discovered a tumor about one-half inch in size at the base of the bladder.[3] Defendant then advised plaintiff he would have to be hospitalized for X-ray treatment and surgery.

Plaintiff then went to a county hospital and consulted other doctors. The tumor was removed and found to be malignant. There were several removals in succession, either of the same tumor recurring or of new tumors successively developing, until it reached an inoperable and incurable stage.

The question is whether or not an earlier cystoscopic examination would likely have resulted in discovery of the tumor in time to have removed it before it became malignant, or at a sufficiently early stage (if carcinomatous) to have eradicated the cancer. In short, was defendant's failure to cystoscope a proximate cause of the development of plaintiff's incurable cancer?

In respect to this question, Dr. Dillon, who saw the tumor shortly after it was discovered, testified it would be very difficult for anyone to say how old it was because some tumors grow very slowly and remain the same size over a particular length of time, whereas others are extremely rapidly growing; it would be almost impossible to tell how long this tumor had been there. Dr. Gilcreest testified that nobody in the world can say how fast tumors grow; it can start as a benign tumor that degenerates in time into a cancer, or with an ulceration that degenerates and goes into a cancer in a period of years, or it can start as a very malignant type of cancer; sometimes a growth may be observed over a period of weeks. Dr. Hand said "We never know when they [cancers] start or when they may start."

There was evidence, too, concerning the likelihood of successful treatment of cancer. Dr. Dillon said that most patients with cancer of the bladder do not recover; any tumor which is treated early presents a better chance of recovery than if treated late. Dr. Gilcreest said the only hope is to ascertain it early, when the tumor is in an early state; prognosis for a man of plaintiff's age is bad. Dr. Hand said that cancers

---

[3]There is a conflict of evidence on the question whether he waited two years before giving another cystoscopy or whether he several times advised a cystroscopic examination and plaintiff each time refused it; also, there is a conflict of medical testimony on the question whether a two-year interval between cystoscopic examinations was or was not standard medical practice in the community. But we have no concern with the issue of negligence. We are concerned only with the issue of proximate cause.

are things that should be removed as soon as possible. Asked if a cancer can be cured, Dr. Wesson said: "Sometimes" you can arrest them; "sometimes" you can cure them, if you can cut everything out. He also said that "sometimes" a little tumor in the bladder, whether malignant or benign, can be destroyed by X-ray.

Plaintiff's counsel asked Dr. Wesson if it was his position that it would not have been a great help in preventing the bladder recurrent tumors if the original tumor had been detected earlier by cystoscopy and removed promptly. He replied: "My answer is that it wouldn't have made much difference. We don't know whether that tumor occurred one week or one month or two months before I saw it. If it had been there very long it would have been very large, but it was removed on July 14th, 1949, and when they did the next operation to remove the tumor from the rectum they had difficulty in finding the site of this tumor, and they had provided radon seeds to put in in case there had been any recurrence, and it was soft, smooth, pliable tissue, just like rubbing your hands over it—so they thought it would be a waste of time putting radon seeds in, they thought they had a cure; and no tumor ever came back at this spot, according to this record." Then the following ensued: "Q. Is it your position that even though this original tumor had been removed promptly, as it should have been it would still have ended up in this same condition; is that your testimony now? A. Yes. Q. Then the neglect, if it was neglect, to remove it over the period of two years, had nothing to do with it? . . . THE WITNESS: I suppose I want to say yes, with an explanation again. THE COURT: You may explain. THE WITNESS: This man has formed five tumors in five different places. The first tumor was small and it disappeared after it was cut out and burned, completely disappeared. Now, later on, while he was under observation, they found a much bigger tumor that grew in just a few weeks, between two observations. A man that is going to form cancers in the bladder is going to continue to form them."

This testimony given by the experts serves to illustrate the fact that there is evidence sufficient to support a finding of lack of causal connection between defendant's negligence and the cancerous condition which developed. We must remember that the trial judge when considering the motion for new trial was sitting as a trier of the facts, evaluating the testimony and weighing the evidence.

We observe that appellant, in his discussion of this point does not speak of negligence as an effective cause of the *cancer* which developed. He speaks, instead, of defendant's failure to cystoscope as a proximate cause of plaintiff's "damage," of plaintiff's "detriment," and of the "suffering and hardship incident to the growth of the malignant tumor in plaintiff's bladder." He says that but for this neglect plaintiff's chances of living longer and more comfortably would have been greater than now. That is not speaking to the issue framed by the pleadings, as interpreted by counsel and the trial court. It does not accord with the theory upon which the case was tried.[4]

■ (2) *Appellant contends that the order for new trial was predicated upon an erroneous legal concept as to the kind of proof required in respect to the issue of proximate cause in a malpractice suit.*

Appellant characterizes the asserted erroneous illegal concept as a requirement of "direct evidence upon an ultimate fact which had been properly established by the probative facts in the record," coupled with an asserted requirement, imposed by the trial judge, that there be evidence "that in the majority of similar cases in which the omitted measures are used the disease is arrested or cured."

Appellant does not derive any of this from the order for new trial or from any findings made by the court. He quotes a few passages from an opinion rendered by the trial judge when he announced his decision to grant a new trial. Appellant then says: "It is clear from the written opinion of the trial court that it considered the evidence on the issue of proximate cause insufficient because there was no direct testimony tending to prove that plaintiff would probably have been cured had defendant followed the requirements of standard practice and cystoscoped him at an earlier date."

It is doubtful if it would be proper to resort to an opinion for the purpose of negativing the ground for new trial which was clearly expressed in the order subsequently made and filed. (See *Union Sugar Co.* v. *Hollister Estate Co.*, 3 Cal. 2d 740, 749-750 [47 P.2d 273].) However, the opinion as first rendered and as amplified by a supplemental opinion, clearly demonstrates the theory upon which the case was tried and shows that the evidence supports the finding, made by the judge as a trier of the facts, that there was insufficient proof of causation under that theory.

---

[4]Discussed at length later on in this opinion.

The first opinion by the judge who presided at the trial, Honorable Robert L. McWilliams, was rendered when he announced his decision to grant a new trial. He had not yet filed an order for new trial. Plaintiff immediately presented a memorandum in which he contended that the issue was not whether defendant's negligence (failure to make a cystoscopic examination at an earlier date than he did) was a proximate cause of plaintiff's incurable cancer (he said "such proof would be well nigh impossible"); instead, he contended it was sufficient for him to establish that "some detriment" proximately resulted, such as loss of the opportunities afforded by medical science to control or cure the tumor, or decreased probability of a cure.[5]

In the opinion first rendered, Judge McWilliams said:

"I have concluded that a new trial must be granted in this case. I am satisfied after a careful study of the briefs and the available record that plaintiff has not proved by a preponderance of the evidence that the failure of the defendant to cystoscope the plaintiff was a proximate cause of plaintiff's becoming afflicted with an incurable cancer of the bladder as contended by him.

"In view of the evidence I cannot disagree with the jury on the issue of negligence. Under the evidence the jury may have been justified in finding that standard medical practice in this locality required that defendant cystoscope the plaintiff to ascertain whether or not he had a tumor of the bladder in view of his symptoms. But there is room for a decided difference of opinion on the subject. Dr. Frank Hinman, who was called by plaintiff on his own behalf and who, of the witnesses who testified, was possibly the outstanding authority on the subject involved, said on a number of occasions that whether or not the plaintiff should have been cystoscoped, in the circumstances that were explained to him in hypothetical

[5]He also requested that the order, when made, reflect the opinion of the court (if that was the court's opinion) that there was "no evidence . . . that defendant's negligence was the proximate cause of any detriment sustained by the defendant" rather than one giving "insufficiency of the evidence to justify the verdict" as a ground, adding:

"Since 'insufficiency of the evidence' means 'contrary to the weight of the evidence' as well as 'want of evidence' plaintiff would be precluded, if that formula were included in the order, from testing upon appeal the correctness of the real ground upon which the motion is granted."

The fact that the order, subsequently filed, did specify insufficiency of the evidence, not want of evidence, lends emphasis to the view we have already expressed, that Judge McWilliams did weigh the evidence.

questions, was a matter of judgment for the attending physician to decide.

"However, the neglect on defendant's part so to do, conceding that it was negligence, is far from leading to the conclusion that plaintiff is therefore entitled to judgment. It still must be proved that the failure to cystoscope plaintiff was a proximate cause of his having developed the incurable cancer complained of. Whether or not such is the case must be considered in the light of all the pertinent facts.

"Say counsel for the plaintiff, the evidence of proximate cause is to be found in the testimony of Dr. Hand and Dr. Gilcreest and of the defendant himself. I fail to find it there or elsewhere in the record. Plaintiff's counsel cite no testimony of Dr. Hand bearing out their contention. They do cite testimony by him to the effect that plaintiff had no cancer when Dr. Weyrauch cystoscoped him prior to defendant's undertaking his treatment. That may be conceded. They further cite Dr. Hand as having testified that standard practice required that the defendant cystoscope the plaintiff long prior to June 23rd, 1949. I may concede this contention. They further cite him as having testified that a malignant cancer should be removed as soon as possible. I have no doubt of the correctness of this opinion. Counsel further state that the earlier that cancer is discovered the greater the likelihood of successful treatment. This also cannot be successfuly contradicted. However, none of these matters is of material aid in the determination of the question with which we are here concerned. I do find, however, some other matters in Dr. Hand's testimony that I regard as quite pertinent and which militate against the contention made on behalf of plaintiff. Thus, Dr. Hand said that the medical profession never knows 'when cancer starts or when they may start.' (Tr. p. 19.) He further testified, contrary to plaintiff's contention, that the sloughing off at the top of the cancer such as the one here found does not indicate that the cancer is not one of very recent origin. He explained that the degree of sloughing in a cancer of the bladder is no particular criterion of how long the cancer has been there, particularly in the absence of infection; also that it is not true that normally you do not expect sloughing until the cancer has started to die off, as plaintiff's counsel argue. (Tr. p. 30.)

"Counsel also cite certain passages from Dr. Gilcreest's testimony as bearing them out on this issue of proximate cause. Thus they refer to his testimony that in case of the discovery

of a tumor in the bladder '*the only hope is to* ascertain that early when the tumor is in an easy state for removal.' This testimony is very significant as indicating that even when a tumor of the bladder is discovered it is but a matter of hope and not of probability that it can be successfully removed. Moreover, since both Dr. Gilcreest and Dr. Hinman testified that the tumor here involved could have grown to the size it was when discovered in three months time, the defendant might have cystoscoped plaintiff on several different occasions without discovering it at a sufficiently early stage to have permitted its successful removal.

"Counsel also cite Dr. Wesson as having testified that plaintiff should have been cystoscoped at least a year before that was actually done. He is also cited as having testified that urologists agree that all tumors should be removed as quickly as possible because they are all potentially malignant. He is also cited as having testified in answer to the question 'Can you cure a cancer?' '*Sometimes* you can arrest them. *Sometimes* you can cure them if you can cut everything out.' (Tr. p. 25, Emphasis here and elsewhere is of course mine.) This testimony certainly does not come near suggesting nor even tending to prove that had plaintiff been cystoscoped and operated upon he would probably have been cured. In fact, the latter passage quoted has the opposite tendency in suggesting that the outcome of these cancer cases is highly speculative. That speculative outcome is further indicated by Dr. Wesson's testimony which counsel for plaintiff also quote in their brief to the effect that 'any little tumor in the bladder can *sometimes* be destroyed by X-rays.' All of these opinions may be conceded to be correct but they are of no material aid in deciding the question under consideration. Prior cystoscopy might have revealed the tumor had it been there when the cystoscopy was performed. But it does not follow that even if it were found it probably could have been successfully removed. It may be conceded that because of defendant's failure to cystoscope plaintiff there was no chance to eradicate the cancer. But it is a far cry from that to the conclusion that had the defendant cystoscoped the plaintiff the cancer could probably have been successfully eradicated.

"Dr. Wesson is further quoted as having testified, as he did, that 'The chances of a patient living longer and more comfortably are greatly increased by the early observation and treatment of the tumor.' (Tr. p. 48.) This testimony is also far from proving the point in controversy. It may well be

that the chances of a patient's living longer and more comfortably might, by early observation and treatment, be increased from 10 percent to 40 percent.[I]  But that is certainly not proof that such early observation and treatment would probably result in curing a cancer, or would probably prevent a benign tumor from continuing to grow and become malignant.  It depends in part, as the witness said, on whether 'you can cut everything out.'

"The uncertainty of the situation insofar as plaintiff is concerned is further indicated by the testimony given by the plaintiff himself that Dr. Dillon had explained to him at the San Francisco Hospital when he was operated upon there that the tumor was so situated that 'they couldn't get at it with ordinary surgery and that he thought there was a five percent chance that—with radium treatment, so we had the radium treatment.'  (Tr. p. 5.)  This difficulty of getting at the tumor with ordinary surgery, as Dr. Dillon termed it, with the consequent uncertainty of a successful operation would, it would seem, have presented itself regardless of the date of the operation.  It will be recalled that Dr. Wesson testified that the tumor was located 'just behind the interureteric ridge.'  (Tr. of Dr. Wesson's testimony, p. 35.)

"Dr. Hinman, although called by plaintiff, was not interrogated as to the matters under discussion and is not cited by counsel for plaintiff in his argument on this phase of the case, nor, I may add, is he cited on scarcely any phase of the case.

"My conclusion is that the showing made by plaintiff is wholly insufficient on the issue of proximate cause as there is no evidence proving that anything that might have been done in the treatment of plaintiff would in all probability have prevented the development of the tumor on plaintiff's bladder into an incurable cancer.  It must be remember[ed] that 'The burden of proof resting upon the plaintiff requires that the evidence of negligence proximately causing the injury be evidence which leads—not merely wavers—toward the fact

---

[I] "I cannot concur in plaintiff's contention that the word 'chances' as here used means 'probabilities' in the sense for which counsel contend. As stated in Webster's Dictionary of Synonyms, the word 'chance' may mean degree of probability; as, his chance of success is one in ten; it may mean one possibility of success among many possibilities of failure, as, he is always willing to take a 'chance.'  With two throws of the dice one's chances of throwing all sixes would be greatly increased over his chances on one throw.  But I doubt if even plaintiff's counsel would argue that that fact proves the probability of his throwing all sixes on two throws."

sought to be proved.' (*Hopkins* vs. *Heller,* 59 Cal.App. 447, 454 [210 P. 975]. Hearing by Supreme Court denied.) In view of my conclusions on this point it is not necessary for me to take the time, of which I have very little tò spare, to consider the question of the statute of limitations.

"I may add that I have not considered the affidavits that were filed by the parties. They consisted very largely of hearsay testimony. Moreover, since they were merely filed and not offered in evidence they could not, even though containing competent testimony, properly have been considered by me.

"For the reasons stated above a new trial will be granted on the ground of the insufficiency of the evidence to justify the verdict."

Judge McWilliams' supplemental opinion, given after considering plaintiff's contention that the question was whether "*some detriment* proximately resulted from defendant's negligent acts" reads as follows:

"At the argument between counsel on the form of the order that the court should make in granting a new trial in this case, one of plaintiff's attorneys pressed a point which I believe deserves a word of comment. He contended in substance that even though there is not sufficient evidence that the defendant's negligence had been a proximate cause of the cancer complained of, there was sufficient evidence to justify the jury in finding that as a proximate result of his negligence plaintiff suffered 'some detriment' in that he was thereby 'deprived of the opportunities afforded by medical science' of controlling or curing the tumor, which opportunities were only available upon the tumor being discovered.

"Two answers to that point suggest themselves. The first is that this argument is akin to the one I discussed in my main opinion and the answer to it is the same, namely, that whether or not the tumor would have been discovered by one or more cystoscopies so as to have permitted medical science to treat the plaintiff is entirely a matter of speculation.

"A second answer to the argument is that it is inconsistent with the theory upon which the action was instituted and tried. That theory is that as a proximate result of defendant's negligence plaintiff developed an incurable cancer. This is indicated by the allegations of the complaint and also by examination and cross-examination by plaintiff's counsel of all the witnesses who testified. Finally, it evidently was not the theory of the jury as evidenced by the very substantial verdict for $30,000.00 rendered by them. A verdict for such

a sum could in my opinion only have been returned on the theory that as a proximate result of defendant's negligence plaintiff developed an incurable cancer.''

It seems clear to us from these opinions that Judge McWilliams did weigh the evidence and deemed it speculative, as a matter of fact, under the pleadings as interpreted and applied by counsel and court during the course of the trial.

In his complaint, plaintiff alleged that as a proximate result of defendant's negligence the ''tumor developed . . . into a cancer of the bladder, and plaintiff was caused to, and he now does, suffer from an incurable cancer of the bladder.''

In his opening statement, plaintiff's counsel said that during the two years plaintiff was under defendant's care a tumor commenced to grow; that it would have been visible if the bladder had been examined by cystoscope at frequent intervals, and could have been readily removed in its early stages; that when discovered it had by lapse of time gotten into such an advanced stage it could not be successfully removed; that a malignant tumor can be treated properly and successfully if caught in its early stages, but when no longer in its early stages it is too late; that plaintiff has not very much longer to live as a result of this malpractice of the defendant; that this growth of the cancer could very readily, very easily, have been prevented had the doctor kept an eye on the condition of the patient during that two-year period; the reason plaintiff has an irreparable cancer of the bladder is the failure of the defendant to properly cystoscope him.

That statement, made at the very beginning of the trial, indicates that plaintiff's theory of his case was precisely as Judge McWilliams understood it to be.

The same theory is reflected by the questions which plaintiff's counsel asked of the medical experts. For example, counsel asked Dr. Dillon: ''Was it [the tumor, the cancer] treated too late to cure it?'' He asked Dr. Gilcreest whether the probabilities of ''curing a cancer or eradicating it'' are increased or decreased by the time of the discovery of the cancer, and whether the plaintiff, in view of his present condition, ''has any chance at all of ever getting well.''

The jury was instructed as follows:

''Plaintiff in this case alleges in substance that on or about June 2nd, 1947, defendant undertook to diagnose and treat plaintiff, and that thereafter he so negligently diagnosed and treated him as to permit an incipient tumor in the bladder

of plaintiff to remain undetected and untreated until on or about June 25th, 1949, and that as a proximate result of the said negligence of defendant the tumor developed into an incurable cancer.

''Evidence merely proving, if there was evidence so proving, that plaintiff had an incipient tumor which subsequently developed into an incurable cancer, would not be sufficient to justify a verdict for the plaintiff. To justify such a verdict plaintiff must also prove that it was a proximate result of defendant's negligence that that result occurred.''

The parties have stipulated that this instruction was given by the court upon its own motion and was not specifically requested by either party. This instruction definitely reflects Judge McWilliams' understanding of the theory upon which the case was tried, the same as described in his supplemental opinion. It comports with the significant allegations of the complaint, plaintiff's opening statement, and the questions which plaintiff asked the medical experts.

We find no error in the making of the order for a new trial. The order is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied February 26, 1954, and appellant's petition for a hearing by the Supreme Court was denied March 25, 1954.