[Civ. No. 300. Fifth Dist. April 21, 1964]

CAROL SMALLWOOD, Plaintiff and Respondent, v. JACKIE SMALLWOOD, Defendant and Appellant.

Racanelli & Trepel and Anthony J. Trepel for Defendant and Appellant.

McVay, Reid & Azevedo and Nathan B. McVay for Plaintiff and Respondent.

CONLEY, P. J.—This is an appeal from an order of the Superior Court of Stanislaus County denying a change of custody of 6-year-old Mark Smallwood from his father, respondent Carol Smallwood, to his mother, appellant Jackie Huntington, formerly Jackie Smallwood.

In the original Smallwood interlocutory decree of divorce filed in Stanislaus County on September 8, 1961, custody of

the child was awarded to the appellant mother with a right of reasonable visitation reserved to the father. On June 25, 1962, a hearing was held on respondent's motion for a modification of custody; in the supporting affidavit, plaintiff Carol Smallwood stated that defendant Jackie Smallwood was living in adultery with a man not her husband, and that she had become pregnant by that other man. At the hearing, Judge Fowler ordered that the interlocutory decree be modified to award the custody of the child to the father with a right of reasonable visitation reserved to the mother.

On August 16, 1962, the mother initiated a proceeding for another hearing relative to custody; the parties filed numerous documents leading to the present hearing; in one of her affidavits, Mrs. Huntington stated that she was now a fit and proper person to have the care of the minor child; that she "is contemplating marriage immediately upon the entry of the final decree of divorce, the interlocutory decree of divorce being filed on the 8th day of September, 1961, and that your affiant can provide such child with a fit and proper home." The motion was resisted through the filing of appropriate pleadings by Carol Smallwood.

On September 11, 1962, a final decree of divorce was filed and the appellant married David Huntington, the man with whom she had been living.

On February 18, 1963, the motion for the change of custody was heard by Judge Fowler. The court refused to grant a change of custody and ordered that the small boy should continue to live with his father with a reasonable right of visitation reserved to the mother.

Two points are made by the appellant on the appeal. It is first contended that the order constituted an abuse of discretion, and, secondly, that uncontradicted testimony shows that the mother had the right to the custody of the child because of his tender years, and because "other things are not equal." Neither point is good.

The trial court made its decision on all of the evidence produced at a rather lengthy hearing which resulted in a reporter's transcript of over 200 pages. A trial court is peculiarly fitted to make a decision of this kind based, as it is, on lengthy and often conflicting evidence, and an appellate court's function with respect to the facts is limited to an ascertainment of whether the lower court's determination is supported by substantial evidence.

Appellant repeatedly contends that because the court noted

the fact in its opinion that the mother had previously lived with a man not her husband and had had a child by him that this was the sole ground upon which the court made its decision. This conclusion cannot be reached by one not blinded by advocacy.

It is, of course, proper for this court to consult the memorandum opinion to discover the viewpoint of the trial court in reaching its conclusions. (*Arruda* v. *Arruda,* 218 Cal.App. 2d 410, 417 [32 Cal.Rptr. 257]; *Crabtree* v. *Superior Court,* 197 Cal.App.2d 821, 824 [17 Cal.Rptr. 763]; *Silvers* v. *Wesson,* 122 Cal.App.2d 902, 906 [266 P.2d 169].) The court's memorandum contained, among other things, the following: "After due consideration *of all of the evidence* presented at the hearing of this matter, and *giving full consideration to the same* and the law applicable thereto, it is the opinion of the court that the prayer of the defendant to have custody of the minor vested in her should be denied. . . . There is, however, another factor involved, and that is that if the defendant loved the minor child to the extent she contends, then she would not have exposed herself to losing the custody of the child by her adulterous conduct and if that be not the complete answer, then the defendant is unstable.

"*There is aside from the above, no showing made that the home where the minor is now living is inadequate and/or that he is in any manner not properly supervised.* The minor's health is good, his teeth are in good order and in the conversation the court had with said minor, held under stipulation of respective counsel, he appears to be normal, alert, well mannered and healthy and a pleasing youngster." (Italics added.)

It is thus apparent that the judge made his order only after due consideration of all of the evidence presented at the hearing. As respondent points out, there were many things to be considered by the judge at a hearing of this kind.

Mrs. Huntington admittedly based her request for a change of custody on the fact that she had married Huntington after living with him almost a year unmarried and having a child by him while they were unmarried, that they had a nice home with some 12 rooms, and that he was a wealthy man. The judge heard the testimony and the cross-examination of Mr. Huntington. Jackie Smallwood was Mr. Huntington's third wife. He judged his net worth at around $50,000 to $60,000, the money having come to him as the result of an accident in which he lost his leg; at the time he met Jackie

Smallwood, he had been drinking to excess and was "emotionally disturbed," because his second wife had demanded that he either give up his three children by a previous marriage or she would leave him; at that time, he and his tenant, Jackie Smallwood, found solace with one another. Mr. Huntington also testified that after the annulment of his second marriage, he and his ex-wife tried to reconcile and that in the spring of 1961 he was living with her while they were unmarried.

The judge heard the testimony of one Ruth Pine, a teacher in the Modesto city school system where Mark Smallwood attended, and Helen Elam, who lived across the street from the Smallwood home in Modesto. The latter testified that on one occasion Mark was out in the backyard playing and his mother drove up; the mother walked into the garage; "When I heard Mark start screaming and yelling I walked out to see what was the matter. Mark had his arms around his daddy and was screaming and wouldn't turn loose. He was crying, 'Don't make me go with her.' She had her arm on his arm and tried to pull him loose. His father said he was not going to make him go if he didn't want to. She said, 'You put him up to this.' He said, 'I did not. Go to your mother.' He said, 'No, I don't want to go, please don't make me.' He said, 'If he doesn't want to go, I can't force him, I can't force him like this,' and then she got mad and she told him that she would get him back, that she had the money to fight it with and she would bleed him dry. She would get him back where he wouldn't have him again."

The judge also heard the testimony of Leana Smallwood, the mother of Carol Smallwood, and grandmother of Mark Smallwood; the boy accompanied her to Sunday School every Sunday when he was living with his father; she testified that the child had been careless and inefficient with his work when he first started to school in September, but that since that time he had greatly improved. By stipulation of the parties, the trial judge also talked with the small boy outside of the record.

There was no evidence of character or action on the part of the respondent which would compel a finding of unworthiness. A report of the detective hired by appellant that respondent had paid court to a young woman after his divorce was entirely consistent with his fitness as a parent.

The rule that "other things being equal" (Civ. Code, § 138, subd.(2)) the court should award the custody of a very young child to the mother is a rule of common sense, but

it is seldom that other things are equal within the meaning of that section.

In *Crater* v. *Crater*, 135 Cal. 633, 634 [67 P. 1049], the correct rule for a trial court to follow when considering a modification of a custody order is thus stated: "The court, in revising and modifying its decree, proceeds upon new facts considered in connection with the facts formerly established, the change of circumstances, the conduct of the parties, and the best interests of the child."

In *Foster* v. *Foster*, 8 Cal.2d 719, 730 [68 P.2d 719], the following was said: "An application for a modification of an award of custody is addressed to the sound legal discretion of the trial court, and its discretion will not be disturbed on appeal unless the record presents a clear case of an abuse of that discretion. [Citations.]"

*Briscoe* v. *Briscoe*, 221 Cal.App.2d 668, 672 [34 Cal.Rptr. 663], holds: " 'In decisions too numerous to mention, it has been said that the trial judge having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and determine the factual issues presented by their testimony. And this is especially true where the custody of minor children is involved. An appellate tribunal is not authorized to retry the issue of custody, nor to substitute its judgment for that of the duly constituted arbiter of the facts. Only upon a clear and convincing showing of abuse of discretion will the order of the trial court in such matters be disturbed on appeal.' [Citations.]" (See also *Prouty* v. *Prouty*, 16 Cal.2d 190, 195 [105 P.2d 295].)

As was observed in *Stack* v. *Stack*, 189 Cal.App.2d 357, 368 [11 Cal.Rptr. 177]: "It has been so frequently stated as to have become a truism that primary consideration must be given to the welfare of the child, that the court is given a wide discretion, that its discretion will not be disturbed in the absence of a manifest showing of abuse, and that every presumption supports the reasonableness of the decree. [Citations.]"

In *Denham* v. *Martina*, 214 Cal.App.2d 312, 318, 319-320 [29 Cal.Rptr. 377], this court stated: " 'It is established by a legion of decisions that a California court will not order a change in the custody of a minor child in the absence of a showing that the welfare of the child clearly requires it. [Citations.]'
" . . . . . . . . . . . . . . .

598

"A relevant point decided in the second *Stewart* case [*Stewart* v. *Stewart*, 130 Cal.App.2d 186 (278 P.2d 441)] is that in passing on factual matters bearing on the fitness or unfitness of a parent seeking custody of children, the court should properly receive evidence of past actions on the part of the parent, not for the purpose of deciding whether at an earlier time the parent was unfit or of punishing the parent for former immoral actions, but to cast light on the present fitness of the parent. As is said on page 194 of the opinion:

" 'It is true that the question of whether a parent is a fit or proper person to have the custody of a minor child refers to his or her fitness at the time of the hearing, and is not necessarily controlled by conduct many years prior thereto. However, evidence of prior acts of misconduct may be admissible if it may be said to have a direct bearing on the issue of present unfitness, but such evidence should be limited to this issue alone. ... Plaintiff's moral character, stability, acts, conduct, and disposition were relevant matters to be considered by the trial court.' "

In *Urquhart* v. *Urquhart*, 196 Cal.App.2d 297, 300 [16 Cal.Rptr. 469], it is said: "It has been often stated that in this type of case, the trial court is given wide discretion, and its determination will not be disturbed upon appeal in the absence of a showing of abuse. Every presumption supports the reasonableness of the decree (*Gudelj* v. *Gudelj*, 41 Cal.2d 202, 208. [259 P.2d 656] ; *Gantner* v. *Gantner*, 39 Cal.2d 272, 275 [246 P.2d 923]). The Supreme Court in a recent case has affirmed this rule with emphasis stating in *Sanchez* v. *Sanchez*, 55 Cal.2d 118, 126 [10 Cal.Rptr. 261, 358 P.2d 533], 'But, as is true in all appellate reviews, and most emphatically in this type of controversy, it is not the function of this court to reweigh conflicting evidence and redetermine findings; neither is this court vested with discretion to be exercised in the premises. Our function has been fully performed when we find in the record substantial evidence which supports the essential findings of the trial court. [Citations.]' "

 It is clear that the trial court had ample evidence before it upon which to base the order; no abuse of discretion was shown.

The order is affirmed.

Brown (R. M.), J., and Stone, J., concurred.