[S. F. No. 22511.   In Bank.   Sept. 18, 1967.]

LUPE TOMEI, Plaintiff and Appellant, v. BERTHOL HENNING, Defendant and Appellant.

Belli, Ashe, Gerry & Ellison and Jack G. McBride for Plaintiff and Appellant.

Peart, Baraty & Hassard, Salvatore Bossio, John I. Jefsen and Allan H. Fish for Defendant and Appellant.

TRAYNOR, C. J.—Plaintiff appeals from the part of a judgment entered against her upon a jury verdict on her complaint to recover damages for medical malpractice. Defendant appeals from the part of the judgment entered upon the verdict against him on his cross-complaint to recover

the value of his professional services and reimbursement for payments of other medical expenses made by him on plaintiff's behalf.

Defendant performed a hysterectomy on plaintiff. During the operation he accidentally sutured her right ureter in two places. The accident was not discovered until four days later. A urologist attempted corrective surgery, which failed, and thereafter it became necessary to remove plaintiff's right kidney.

At the trial defendant admitted that he had unintentionally sutured plaintiff's ureter. He presented evidence, however, that the misplacing of the sutures and the failure to discover it during the operation were an unavoidable accident and not the result of negligence on his part. Both sides introduced expert testimony on the questions whether defendant should have identified the ureters by sight or touch to avoid them during the operation and whether before closing the wound he should have conducted tests to determine whether the ureters had been injured. Defendant testified that he took none of these precautions. All the experts agreed that damage to the ureters is a hazard of a hysterectomy that should always be present in the mind of the surgeon and that such damage can occur no matter how carefully the operation is conducted. On direct examination, plaintiff's expert, Dr. Edmund F. Anderson, a specialist in obstetrics and gynecology, was asked, "Doctor, during the course of a hysterectomy, where the ureter is tied off in two places, and the abdominal wound is closed without exercising any technique to determine the condition of the ureters, would you consider that the exercise of proper care and skill of a surgeon?" He answered, "No, I would not." On cross-examination, Dr. Anderson testified that surgeons generally try to stay away from the ureters as much as possible, avoiding any contact with them. Consequently the passage of a catheter through the ureter to test it is not done in all cases, but only when the surgeon suspects some damage to the ureter. Dr. Anderson further testified that there is considerable risk of involving the ureters during a hysterectomy: "Q. And the reason for this concern is because gynecologists and surgeons understand that the urinary tract can be damaged no matter how careful the surgeon is; isn't that true, doctor? A. That does happen, yes. Q. It happens in a certain, almost recognized percentage of cases, doesn't it, doctor? A. Yes, I guess so."

Plaintiff contends that the court erred in refusing to give a conditional res ipsa loquitur instruction.[1]

██ "As a general rule, res ipsa loquitur applies where the occurrence of the injury is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible. In determining whether such probabilities exist with regard to a particular occurrence, the court's have relied both on common knowledge and on expert testimony." (*Clark* v. *Gibbons* (1967) 66 Cal.2d 399, 408 [58 Cal.Rptr. 125, 426 P.2d 525]; *Davis* v. *Memorial Hospital* (1962) 58 Cal.2d 815, 817 [26 Cal.Rptr. 633, 376 P.2d 561]; *Siverson* v. *Weber* (1962) 57 Cal.2d 834, 836 [22 Cal.Rptr. 337, 372 P.2d 97].) ██ Since the res ipsa loquitur instruction permits the jury to infer negligence from the happening of the accident alone, there must be a basis either in common experience or expert testimony that when such an accident occurs, it is more probably than not the result of negligence. (*Davis* v. *Memorial Hospital, supra,* at p. 817; *Siverson* v. *Weber, supra,* at p. 836; *Cavero* v. *Franklin etc. Benevolent Soc.* (1950) 36 Cal.2d 301, 309 [223 P.2d 471].) Since the question whether, in the light of past experience, the accident in this case was probably the result of negligence is not a matter of common knowledge among laymen, expert testimony is necessary to determine whether a probability of negligence appears from the happening of the accident. When such testimony is relied upon to establish that probability, it need not be in any particular language. It need only afford reasonable support for an inference of negligence

---

[1]Plaintiff's proposed instruction was as follows: "One of the questions for you to decide in this case is whether the injury involved occurred under the following circumstances: First, that it is the kind of injury which ordinarily does not occur in the absence of someone's negligence; Second, that it was caused by an agency or instrumentality in the exclusive control of the defendant; and Third, that the injury was not due to any voluntary action or contribution on the part of the plaintiff. If, and only in the event that you should find all these conditions to exist, you are instructed as follows: From the happening of the accident involved in this case, an inference arises that a proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference is a form of evidence and unless there is contrary evidence sufficient to meet or balance it, the jury should find in accordance with the inference. When there is any evidence to the contrary, you must weigh all of the evidence bearing upon the issue of defendant's negligence. If the evidence tending to prove that the accident was caused by a failure of the defendant to exercise the care required of him has greater weight than the evidence to the contrary, you will find in favor of the plaintiff on that issue."

from the happening of the accident alone. ▮ Dr. Anderson's testimony affords such support in this case. Thus, he testified that the happening of the accident itself, namely, the suturing of a ureter in two places and closing the wound without exercising any technique to determine the condition of the ureters, was not the exercise of proper care by a surgeon performing a hysterectomy.

Although Dr. Anderson's testimony on cross-examination that there are unavoidable risks to the ureters in any hysterectomy may have weakened the force of his testimony on direct examination, it did not conclusively refute his conclusion that the accident bespoke negligence. Accordingly, it was a question for the jury whether when such an accident occurs it is more probably than not the result of negligence. Since it is undisputed that defendant's conduct was responsible for the accident and that plaintiff did not contribute thereto, it was error to refuse the conditional res ipsa loquitur instruction.

▮ Defendant contends, however, that the error could not have been prejudicial on the ground that a res ipsa loquitur instruction would have been redundant in this case. He points out that the only negligence suggested by the evidence was failure to protect the ureters from being damaged during the hysterectomy, and he concludes that under the instructions given the jury could find him not guilty of negligence in that respect only by rejecting the evidence that would support a finding of negligence under the doctrine of res ipsa loquitur. He urges that in a case in which all the evidence points to particular negligent conduct, it is superfluous to ask the jury to pass first on that evidence under ordinary negligence instructions and then again under a res ipsa loquitur instruction.

We do not believe, however, that a res ipsa loquitur instruction would have been superfluous in this case. It would have focused consideration on the inferences that could be drawn from the happening of the accident itself as distinct from the inferences that could be drawn from the evidence of the specific procedures available to a surgeon to avoid suturing a ureter or to discover such suturing in time to correct it before closing the wound. It bears emphasis in this respect that the suturing of plaintiff's ureter was not done intentionally and the issue is not whether such suturing was a procedure a qualified surgeon might reasonably adopt. Suturing the ureter was an accident, and the question was whether the exercise of

reasonable care would have prevented it. Properly instructed, the jury could pursue the answer to that question along two distinct routes. It could ask what did defendant do or fail to do that might have caused the accident. Under a res ipsa loquitur instruction it could ask whether it is more likely than not that when such an accident occurs, the surgeon was negligent. Since the verdict was reached without the benefit of a res ipsa instruction, it establishes only that the jury could not find negligence along the first route; it could not identify any specific negligent conduct. Had the instruction been given, however, the jury might reasonably have concluded that regardless of how the accident happened or how it could have been avoided, its happening alone supported an inference of negligence. We conclude that it is reasonably probable that a result more favorable to plaintiff would have been reached had the instruction been given. The error was, therefore, prejudicial. (Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

█ Since it is possible that the verdict against defendant on his cross-complaint was influenced by the jury's decision in his favor on the complaint, the part of the judgment on the cross-complaint should also be reversed. (See *Hamasaki* v. *Flotho* (1952) 39 Cal.2d 602, 609 [248 P.2d 910]; *Sun Oil Co.* v. *Union Drilling etc. Co.* (1929) 208 Cal. 114, 119 [280 P. 535]; *Bird* v. *McGuire* (1963) 216 Cal.App.2d 702, 718 [31 Cal.Rptr. 386].)

The judgment is reversed. Plaintiff shall recover her costs on these appeals.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.