[Crim. No. 7916.   Second Dist., Div. Two.   Aug. 16, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. DEAN T. STANLEY, Defendant and Appellant.

Dean T. Stanley, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—Defendant Dean T. Stanley was convicted after jury trial of two charges of forgery committed on March 4 and 5, 1961, respectively. He admitted three prior felony convictions—robbery in 1932, robbery in 1949 and burglary in 1956. The sentences on the two counts were ordered to run concurrently. Defendant appeals from the judgment.

Four claims of error advanced by him are not supported by the record, namely, (1) that he was denied the right to call witnesses in his own behalf, (2) "that false facts were entered into court," (3) that evidence was suppressed which would have cleared him of the charges, (4) that his "transcript was also confiscated" and he had not "been able or allowed to go over the minutes of it." Item (2) is foreclosed by the presence of a square and substantial conflict in the evidence.　The record is completely silent as to the other items, hence they cannot be considered on this appeal. (*People* v. *Justice,* 167 Cal.App.2d 616, 622 [334 P.2d 1031]; *People* v. *Roberts,* 182 Cal.App.2d 431, 438 [6 Cal.Rptr. 161]; 3 Cal.Jur.2d § 260, p. 781.)

The substance of the charges against appellant is that he forged the name of his brother, Cyrus E. Stanley, to two checks for $50 each and cashed the same. He now contends that the money represented by the checks was loaned to him by the brother for the purpose of enabling him to establish a hobby shop. He himself did so testify but the brother's testimony is to the contrary and appellant's contention is defeated by the presence of substantial direct and circumstantial evidence opposed to his own story.

Appellant's final contention revolves around his effort to show that his brother was an excessive drinker of wine and was intoxicated on the occasion when he (appellant claims) made and delivered the checks to appellant. The brother testified on cross-examination that he did not drink wine or other

alcoholic drinks except an occasional beer. He did not write the checks and he was not drunk at the time of the alleged delivery of the checks. The deputy public defender[1] who represented defendant at the trial explained his objective in this manner: "Your Honor, I would like to explain. You see, it's the contention of my client that his brother actually wrote the checks and is lying about it; and that furthermore, the basis of his contention is that his brother is a great drunkard, and that the checks were written while he was drinking heavily, you see. That's what I am trying to—and finally, it looks to me as though he's drinking right now." Upon cross-examination of the brother counsel endeavored to establish his point. In response to such questions the witness said he never drank with defendant, that on the occasion of alleged delivery of the checks to defendant he had not had considerable alcoholic beverages to drink, that he did not write the checks and deliver them to him, that around the latter part of February and early part of March he, the witness, did not do considerable drinking. "Q. Speaking of the subject of drinking at the present time, would you say that you were a teetotaler, a moderate drinker, or—— MR. NORMAN: I object, Your Honor, as being highly prejudicial and also immaterial. THE COURT: The objection will be sustained on the latter ground. Q. BY MR. KILBRIDE: Did you do any drinking at all during the early—the first few days of March? MR. NORMAN: I object as being immaterial and irrelevant. THE COURT: The objection will be overruled. You may answer the question. Q. BY MR. KILBRIDE: Did you do any drinking at all during the first few days of March? A. Occasionally I had a beer. Q. Did that ever extend into the realm of wine, sir? A. No, it does not." The witness also said that he did not write the checks and would not have done so; he had had nothing to drink on the day of his court appearance; two beers is all he drinks at one time but he may have a highball on a holiday; he had lived at 8941 Alexandria Street four or five years before the trial; "Q. Well, at any time while you were living there did you ever have any wine bottles in that garage, sir? . . . THE COURT: Well, counsel, I think you have the right to go into the question of whether or not there had been any drinking at or about the time in question but whether or not he had been drinking on other previous occasions, I

[1]The public defender exercised the discretion vested in him by section 27706 subdivision (a) Government Code, electing not to prosecute the appeal.

don't think, would be admissible evidence. . . . MR. KILBRIDE: What I wanted to attempt to show or explore, is whether or not the witness is a heavy drinker. And my contention would be that if it is once shown—that a condition once shown to exist is presumed to continue to exist. And if he is a heavy drinker, that was his character in 1956, that it was presumed that it still exists, and—— THE COURT: Oh, I think that's too remote.'' Also that he had no wine bottles in his car in the latter part of December, 1960; he does not drink wine; is not sure whether he had any beer on March 4 or 5; drank no hard liquor during that period of time; was not drunk on March 4th.

Joe T. Haley, Southgate policeman, was allowed to testify that defendant said the brother was in a highly intoxicated condition when he delivered the checks.

█  It will be observed that defendant had the benefit of the full impact of his claim that his brother wrote and delivered the checks and was highly intoxicated at the time. Counsel's effort to show by cross-examination that the brother was a ''great drunkard'' and the checks written while he was ''drinking heavily'' failed of fruition. His claim that a condition of being a heavy drinker in 1956 would be presumed to continue to exist in 1960 finds no support in the law.

█  The authorities establish that drunkenness on occasions prior and subsequent to the one involved in the case does not amount to competent impeachment evidence.

Volume 3 Wigmore on Evidence (3d ed.) section 933, pages 480-481: ''Intoxication, if it is of such a degree as to deserve the name, involves a numbing of the faculties so as to affect the capacity to observe, to recollect, or to communicate; and is therefore admissible to impeach. . . . But a general *habit of intemperance* tells us nothing of the witness' testimonial incapacity except as it indicates actual intoxication at the time of the event observed or the time of testifying; and hence, since in its bearing upon moral character it does not involve the veracity-trait (ante, § 923), it will usually not be admissible.'' McCormick on Evidence, section 45, page 98: ''One form of abnormality is that of being under the influence of drugs or drink. If the witness was under such influence at the time of the happenings which he reports in his testimony or is so at the time he testifies, this of course is provable, on cross or by extrinsic evidence, to impeach. Habitual addiction stands differently. Under a tradition arising perhaps when three-bottle men were more frequently encountered, it is gen-

erally held that the mere fact of chronic alcoholism is not provable on credibility. On the other hand, as to drug-addiction to which more social odium has been attached, many decisions allow it to be shown to impeach, even without evidence that it did in the particular case affect truth-telling, while an equal number, absent a particular showing of effect on the witness's veracity, would exclude it. In respect to both addictions the excluding courts seem to have the better of the arguments." See also Witkin, California Evidence, section 642, page 687; *McQuage* v. *City of New York,* 285 App. Div. 249 [136 N.Y.S.2d 111] ; *Lanham* v. *Lanham,* 62 Tex.Civ. App. 431 [146 S.W. 635, 639] ; *People* v. *Buono,* 191 Cal.App. 2d 203, 230-233 [12 Cal.Rptr. 604].

Appellant's own offer to now prove his brother's inebriety includes prospective testimony of Andy Guerth, covering the period of 1938 to 1945; Mr. and Mrs. George Hutchison, to the effect that the brother "does drink alcohol in excess," no time specified; Wesley Statenburg and Bob Eckles, no time specified. This evidence if offered in open court would have to be excluded under the authorities above cited.

There was no miscarriage of justice here.

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.