[Civ. No. 25771. First Dist., Div. One. Feb. 11, 1970.]

DIRK WILLIAM SPRINGER, Plaintiff and Appellant, v.
RAY REIMERS et al., Defendants and Respondents;
HOLLY SUGAR CORPORATION, Intervener and Appellant.

### COUNSEL

Werchick & Werchick and Jack H. Werchick for Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold and C. Gordon Taylor for Intervener and Appellant.

Clark, Heafey & Martin and Chris G. Gasparich for Defendants and Respondents.

### OPINION

**MOLINARI, P. J.**—This is an appeal by plaintiff Dirk William Springer and Holly Sugar Corporation, intervener (hereinafter sometimes referred to as "plaintiffs"), from a judgment entered on a jury verdict for defendants Ray Reimers and E. Guy Warren, doing business as Warren Transportation Company (hereinafter sometimes referred to as "defendants") in an action for personal injuries brought by Springer against Reimers and Warren. Holly Sugar Corporation (hereinafter "Holly"), Springer's employer, intervened to recover the workmen's compensation payments made to Springer.

### The Facts

On February 15, 1963, Springer, a pulp dryer foreman for Holly, and its employee since 1945, was injured when he fell from the top of a hopper trailer which was being loaded at his employer's plant. The trailer was part of a trucking rig consisting of a diesel-powered tractor and two hopper trailers. At the time of the accident the trucking rig was owned by Warren and was driven by Reimers in the course and scope of his employment for Warren. Each trailer had two compartments which were filled with sugar through separate hatches on top of the trailer.

Among his duties Springer was required to assist the drivers of the trucking rigs in loading granulated sugar. In the loading operation the driver positioned the trailers so that the hatch would be under a loading bin. Springer would then climb to the top of the trailer, open the hatch, and place a canvas tube or "sock" attached to the bottom of the bin over the hatch opening. The sugar flowed from the bin into the trailer through the sock when Springer activated a shutter valve at the bottom of the bin. After the compartment was filled, Springer would shut the valve and then step down on a platform adjacent to the top of the trailer. He would then verbally signal the driver to move forward so that the next compartment could be filled.

On the day of the accident Reimers drove a trucking rig to the Holly plant, arriving at about 5 a.m. Springer had come to work about one-half hour earlier. After Reimers had positioned the truck and trailers under the loading bin and the forward compartment of the first trailer had been filled as described above, Springer stepped off the top of the trailer and signalled Reimers to move the trailer forward so that the rear compartment could be loaded. While this compartment was being filled, Reimers left the cab of the tractor, climbed up and stood on a ladder resting against the trailer and conversed with Springer until he saw the compartment was almost full, whereupon he returned to the cab of the tractor to await Springer's signal to move forward.

While Reimers was waiting for the signal Springer fell from the top of the trailer and sustained serious bodily injuries. The testimony as to the cause of Springer's fall is in sharp conflict. Springer testified that after the compartment was full and as he reached up to turn off the sugar flow valve the trailer on which he was standing suddenly moved or "jerked" causing him to fall to the concrete below. Reimers testified that he thought he heard a "thump" over the sound of the engine,[1] so he left the cab to investigate and found plaintiff lying face down on the concrete between the front and back trailers. Springer stated that he regained consciousness at about this time and asked Reimers why he moved the truck and that Reimers replied he did not move the truck. Reimers denied this conversation took place. The night watchman, Jesse Alvarez, testified that after Reimers had come to his office to report the accident and to telephone for an ambulance, he went to Springer's side. Upon inquiring what happened Springer stated "The guy pulled the truck away from me, from under me." The records of the emergency room where Springer was taken for treatment on the day of the accident also contain a statement similar to that which Springer made to Alvarez.

Reimers testified substantially as follows: that he had exclusive control over the truck; the truck could only have moved if he moved it; it would have been improper for him to have moved the truck without a signal from Springer; and that no signal had been given. Reimers flatly denied having moved the truck. There were no other witnesses to the accident.[2]

### Contentions

Plaintiffs contend: (1) The court erred in refusing to give the jury a conditional res ipsa loquitur instruction; (2) the court erred in refusing to

---

[1]The motor of the tractor was running from the time Reimers positioned the "rig" under the loading bin until some time after the accident.

[2]The record discloses that although it was still dark at the time of the accident, the area in which Springer was working was well lighted. Both Reimers and Springer testified that the top of the trailer was dry.

give the jury an instruction on the employer duty presumption arising under the "work safety" statutes of the Labor Code; (3) the court contradicted itself and prejudicially confused the jury by giving BAJI No. 138.2 relating to contributory negligence after it had previously found and so informed the jury that plaintiff was in no way contributorially negligent; (4) prejudicial error was occasioned by the trial court's improper admission of evidence demonstrating plaintiff's prior medical history of alcoholism.

## Res Ipsa Loquitur

Generally, res ipsa loquitur applies where the occurrence of the injury is of such a nature that it can be said in the light of past experience that it probably was the result of negligence by someone and that the defendant is probably the person responsible. (*Tomei* v. *Henning,* 67 Cal.2d 319, 322 [62 Cal.Rptr. 9, 431 P.2d 633]; *Clark* v. *Gibbons,* 66 Cal.2d 399, 408 [58 Cal.Rptr. 125, 426 P.2d 525].) Where res ipsa loquitur applies the jury is permitted to infer negligence from the happening of the accident alone. (*Tomei* v. *Henning, supra.*) The plaintiff is deprived of the benefit of the doctrine of res ipsa loquitur, however, where he introduces evidence of specific acts of negligence *and* the facts as to the cause of the accident and the care exercised by the defendant are shown as a matter of law. (*Di Mare* v. *Cresci,* 58 Cal.2d 292, 299 [23 Cal.Rptr. 772, 373 P.2d 860]; *Akins* v. *County of Sonoma,* 67 Cal.2d 185, 195 [60 Cal.Rptr. 499, 430 P.2d 57]; *Keeton* v. *Henning,* 1 Cal.App.3d 50, 54 [81 Cal.Rptr. 424].) The reason for this rule is that where such facts are shown as a matter of law, justification for resort to the inference of negligence is eliminated. (*Di Mare* v. *Cresci, supra; Akins* v. *County of Sonoma, supra.*)

In *Keeton, supra,* the reviewing court, although reversing on other grounds, held that prejudicial error did not occur because of the trial court's refusal to instruct on res ipsa loquitur. There the evidence without conflict showed that, because a hay truck was so overloaded as to obscure the defendant driver's vision, the plaintiff was standing on the tailgate of the defendant's truck, giving him hand signals as he was backing the truck to a barn door; that when the truck reached the proper spot, the plaintiff signalled the defendant to stop the truck, which he did; and that then the driver allowed his foot to slip from the clutch pedal while the truck was in gear and before the motor died, causing it to jerk and hurl the plaintiff backward with resulting injuries. The court, citing *Di Mare, supra,* and quoting from *Akins, supra,* held " 'In the present case the facts are undisputed as to how the accident happened and the care exercised by defendants. . . . The issue is whether the undisputed conduct of defendants constituted negligence which proximately contributed to plaintiff's injuries, and there is no room for resort to inference as to what defendant did or

did not do." (1 Cal.App.3d 50, 54.) Similarly, in *Akins, supra,* the facts were undisputed as to how the plaintiff fell from the county's bleachers, as to the condition of the bleachers, and as to the care exercised by the county. Accordingly, it was held that since the issue was whether the *undisputed conduct* of the county constituted negligence, there was no room for resort to inference as to what the county did or did not do, and, therefore, the res ipsa loquitur doctrine did not apply. (67 Cal.2d 185, 195.)

In the present case, the facts as to how the accident happened and the care exercised by defendants *are* in dispute. Although it is undisputed that Springer fell from the top of the trailer, the testimony as to the cause of the fall is in conflict. Springer testified that the trailer moved or "jerked"; Reimers that it did not move at all. Accordingly, the facts as to the cause of the accident and the care exercised by Reimers are not shown as a matter of law. Plaintiffs are not, therefore, precluded from the benefit of the doctrine of res ipsa loquitur merely because they introduced specific acts of negligence on the part of defendants.

The question in this case is whether, in the light of past experience, the accident was probably the result of negligence and that Reimers is probably the person who is responsible. Here plaintiffs do not contend that the doctrine of res ipsa loquitur is applicable as a matter of law. The instructions proffered by them are those commonly referred to as the conditional res ipsa loquitur instructions which direct the jury that it must decide whether the accident in question occurred under circumstances in which three specified conditions are present, followed by a direction that if, and only in the event that they should find all those conditions to exist, they are instructed that from the happening of the accident an inference arises that a proximate cause of the occurrence was some negligent conduct on the part of the defendant. These instructions then state the effect of the inference.

These three requisite conditions which must be met before the doctrine may be applied are: (1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. (*Wolfsmith* v. *Marsh,* 51 Cal.2d 832, 835 [337 P.2d 70]; *Roddiscraft, Inc.* v. *Skelton Logging Co.,* 212 Cal.App.2d 784, 793 [28 Cal.Rptr. 277].)

Adverting to the first of these conditions, we observe that in determining whether the probability of negligence appears from the happening of the accident, common knowledge among laymen may be relied upon. (*Tomei* v. *Henning, supra,* 67 Cal.2d 319, 322.) Here common knowledge affords reasonable support for the inference of negligence from the happening of the accident alone because a man standing on top of a

truck trailer does not ordinarily fall therefrom unless someone has been negligent.

■ "In dealing with the question whether it is more probable than not that the defendant's negligence caused the accident, the courts have evolved the second requisite condition, i.e., that the defendant must have management or control of the agency or instrumentality which causes the accident. The purpose of this requirement is to eliminate the possibility that the accident was caused by someone other than the defendant. Accordingly, its use is merely to aid the courts in making the determination that it is more probable than not that the accident was the result of the defendant's negligence. [Citations.]" (*Roddiscraft, Inc.* v. *Skelton Logging Co., supra,* 212 Cal.App.2d 784, 798.) Here it is admitted that defendants had the exclusive control over the trucking rig and its movements. There was evidence that the trailer suddenly moved or jerked. ■ A showing of some specific cause for the accident within the defendant's responsibility or a showing that the defendant was responsible for all reasonably probable causes to which the accident could be attributed suffices to establish that the defendant is probably the one responsible for the accident. (*Roddiscraft, Inc.* v. *Skelton Logging Co., supra,* pp. 797-798; see Prosser, *Res Ipsa Loquitur in California* (1949) 37 Cal.L.Rev. 183, 191.) ■ If the jury believed the testimony that the trailer suddenly jerked or moved it could infer that it was more probable than not that Reimers was responsible for the accident. Such a showing would, of course, establish that the instrumentality or "thing" which caused the accident was the trucking rig, since it is admitted that Reimers had the exclusive control of the truck and its movements.

■ Turning to the third condition we observe that the inference of negligence does not point to the defendant until the plaintiff himself has been eliminated as a cause of the accident. (*Roddiscraft, Inc.* v. *Skelton Logging Co., supra,* 212 Cal.App.2d 784, 802; *Escola* v. *Coca Cola Bottling Co.,* 24 Cal.2d 453, 459 [150 P.2d 436].) Accordingly, the plaintiff must account for his own conduct before res ipsa loquitur will apply. In meeting this requirement the plaintiff need only tell enough of what he did and how the accident happened to permit the conclusion that the fault was not his. (*Baker* v. *B. F. Goodrich Co.,* 115 Cal.App.2d 221, 229 [252 P.2d 24]; *Roddiscraft, Inc.* v. *Skelton Logging Co., supra.*) ■ Here, since the court found as a matter of law that Springer was not contributorily negligent it could, upon the basis of that determination, have instructed the jury that the third condition existed as a matter of law. In any event, the evidence was such that the jury could have concluded from the evidence, under the proffered instructions, that this condition was present.

■ Since the res ipsa loquitur instruction permits the jury to infer

negligence from the happening of the accident alone, it would have focused consideration on the inferences that could be drawn from the happening of the accident itself as distinct from the inference that could be drawn from the evidence as to what Reimers did or failed to do that might have caused the accident. (*Tomei* v. *Henning, supra,* 67 Cal.2d 319, 323-324.) Here, since the verdict was reached without the benefit of the res ipsa loquitur instruction, it establishes only that the jury could not identify any negligent conduct. If the instruction had been given, the jury might reasonably have concluded that regardless of how the accident happened, its happening alone supported an inference of negligence. (See *Tomei* v. *Henning, supra.*)

We conclude, therefore, that under the principles above discussed, the evidence of plaintiffs in this case was sufficient to submit to the jury the rule of res ipsa loquitur and that the refusal of the trial court to do so constituted prejudicial error.

## *Work Safety Statutes*

The trial court refused to submit to the jury plaintiffs' proffered instructions with respect to the "work safety" statutes of the Labor Code (§ § 6400-6402)[3] imposing upon employers the obligation of providing employees a safe place to work.[4] In *De Cruz* v. *Reid,* 69 Cal.2d 217, 229 [70 Cal.Rptr. 550, 444 P.2d 342], the Supreme Court, in interpreting these statutes, observed that in their application the term "employment" is intended to be enlarged beyond its usual meaning. Accordingly, the reviewing court noted that the term "employer" has the same meaning as in section 3300[5] and, in addition thereto, includes "every person having direction, management, control or custody of any employment, place of employment, or any employee (citing § 6304); that the term "employee" is defined as "every person who is required or directed by any employer to engage in any employment, or to go to work or be at any time in any place of employment" (citing § 6305); that "place of employment" is "any place, and the premises appurtenant thereto, where employment is carried on, . . ." (citing § 6302); and that "employment" includes "the carrying on of any

---

[3]Unless otherwise indicated, all statutory references hereinafter made are to the Labor Code.

[4]Section 6400 provides: "Every employer shall furnish employment and a place of employment which are safe for the employees therein." In Section 6401 it is provided: "Every employer shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe. Every employer shall do every other thing reasonably necessary to protect the life and safety of employees." Section 6402 reads: "No employer shall require, or permit any employee to go or be in any employment or place of employment which is not safe."

[5]Section 3300, in pertinent part, defines "employer" as "Every person . . . [who] has any natural person in service."

trade enterprise, project, industry, business, occupation or work, . . . in which any person is engaged or permitted to work for hire, except household domestic service." (Citing § 6303; p. 228.)

In *De Cruz, supra,* the owners of a ranch had contracted with a chemical company for fertilizer. This company, in turn, hired the defendant to haul the fertilizer to the ranch. The decedent, a ranch employee, fell from the defendant's hauling flatbed trailer while it was being driven to one of the ranch properties where the decedent was to assist in unloading the fertilizer. The decedent was held to be an employee of the defendant within the meaning of the subject Labor Code statutes.

The *De Cruz* case is clearly analogous to the instant case. ▮▮▮ Springer was permitted on defendants' trailer for the purpose of loading it with sugar. In so loading Springer performed the major portion of his work standing or moving about the trailer, the only exception being when he stepped off to signal Reimers to move forward. The trailer was under the control of Reimers, who had the exclusive "control" and "custody" of the trailer truck subject only to Springer's signal as to when it should be moved. Under this state of the record the trailer was a place where "employment" was being "carried on" and the trailer was under the direction, management and control of Reimers. This evidence establishes as a matter of law that the trailer was a "place of employment" and that defendants were an "employer." Accordingly, it was error for the trial court to refuse plaintiffs' jury instructions relying on the Labor Code provisions mentioned above on the basis that at the time of the accident defendants were not in control of any place of employment and were hence not an "employer" of Springer.

### BAJI Instruction No. 138.2

▮▮▮ The trial court gave BAJI instruction No. 138.2 as follows: "Every person who, himself, is exercising ordinary care, has the right to assume that every other person will perform his duty and obey the law, and in the absence of reasonable cause for thinking otherwise, it is not negligence for such a person to assume that he is not exposed to danger which can come to him only from a violation of law or duty by another person." Plaintiffs urge that it was error to give this instruction in view of the court's determination that there was no contributory negligence on Springer's part, and so instructing the jury, because it prejudicially reinjected the issue of Springer's contributory negligence in the minds of the jury. We agree that it was error to give this instruction. Such an instruction is not proper where the plaintiff is not contributorially negligent. (*Eramdjian* v. *Interstate Bakery Corp.,* 153 Cal.App.2d 590, 606 [315 P.2d 19].) Here there was no evidence of violation of law or duty by *plaintiffs.* Accordingly, the instruction tended

to arouse speculation as to plaintiffs' conduct, and, therefore, could have only confused the jury. We need not consider, however, whether the giving of the instruction was prejudicially erroneous since the instant case is to be remanded for a retrial in view of the prejudicial errors hereinabove discussed.

## The Medical History of Alcoholism

Plainffs assert that it was prejudicial error to admit evidence of Springer's prior history of alcoholism. This claim of error is three-pronged: that the hospital records which were admitted contained hearsay reference to Springer's intemperate habits; that it was improper to permit cross-examination of Springer on this same subject to show that he had been warned by his superiors not to drink before coming to work; and that the admission of this evidence permitted the jury to infer that Springer could not be believed as to the cause of the accident because of his alcoholic background.

The record discloses that Doctor Charles Ruth was called as a witness by Springer. On direct examination Doctor Ruth testified concerning Springer's injuries. In describing these injuries he made reference to the fact that Springer had suffered a cerebral concussion in the accident, and that when he first examined Springer the patient demonstrated symptoms of brain injury; he was uncooperative, irrational and hallucinating. Because of these symptoms, Ruth, an orthopedic surgeon, called in Doctor Mollenkopf, a specialist in internal medicine, as a consultant.[6] On cross-examination Ruth testified that Mollenkopf made a typewritten report of the history he took from Springer; that this report of his examination and diagnosis was placed in Springer's hospital records; and that this procedure is followed so as to permit other doctors treating the patient to read it as part of the history of the case. Ruth stated that he read this report and as a result of Mollenkopf's findings the operation on Springer's knees was postponed several days because his hallucinating condition was not conducive to his taking a general anesthetic. Ruth testified further on cross-examination, over objection, that his final diagnosis which appeared in the hospital chart contained the notation that delirium tremens[7] was a complication in the treatment of Springer's injuries, and that the diagnosis of delirium tremens was based on Dr. Mollenkopf's report. In the course of cross-examination, and after objection by Springer's counsel, Ruth was permitted to read that

---

[6]The record discloses that upon his arrival in the emergency room of the hospital after the accident Springer was first treated by Doctor Mollenkopf. Observing that most of Springer's injuries were related to bone damage, Doctor Mollenkopf called in Doctor Ruth.

[7]Doctor Ruth testified that delirium tremens can be brought about by the absence of alcohol following large amounts of regular consumption.

portion of Mollenkopf's report which narrated that Springer had a history of moderate to heavy alcoholic intake for the past 40 years; that he had been drinking as much as two fifths of whiskey per day which he had reduced to approximately a fifth every two to three days; that he had been a member of Alcoholics Anonymous, and that there was no history of previous delirium tremens. Further cross-examination of Ruth indicated that on the second day Springer was in the hospital Ruth had written the following observation in his progress notes: "Admits to large alcohol intake every week, is irrational, pupils react slowly to light; patient is unco-operative; is pre-medicated but not normal appearing. Shoulder and hands okay. To postpone surgery few days. Hallucinating?"

■ With respect to the error ascribed to admission of the hospital records involving a history of Springer's alcoholism, we first observe that it is well settled that properly authenticated hospital records may be received in evidence as "business records" insofar as they record personal observations of the attending physician or pertinent statements of the patient's history which the physician has made use of in reaching his professional opinions. (*Rosener* v. *Larson*, 255 Cal.App.2d 871, 878 [63 Cal.Rptr. 782]; *People* v. *Gorgol*, 122 Cal.App.2d 281, 295-301 [265 P.2d 69]; *Loper* v. *Morrison*, 23 Cal.2d 600, 608 [145 P.2d 1]; *McDowd* v. *Pig'n Whistle Corp.*, 26 Cal.2d 696, 700 [160 P.2d 797]; Evid. Code, § 1271.)
■ Under this rule the report of a doctor to whom a patient is referred by a medical witness and which is used by such witness as a part of the history of the case and used by such witness in arriving at his diagnosis is admissible even though the doctor who made the report is not called to the stand. (*Kelley* v. *Bailey*, 189 Cal.App.2d 728, 738 [11 Cal.Rptr. 448]; *Rosener* v. *Larson, supra*, at p. 878; see also *People* v. *Brown*, 49 Cal.2d 577, 586-587 [320 P.2d 5]; *Hope* v. *Arrowhead & Puritas Waters, Inc.*, 174 Cal.App.2d 222, 230-231 [344 P.2d 428].) The rationale for the latter principle is that "Such a report stands on a parity with a patient's history of an accident and ensuing injuries given to his physician. It is admissible not as independent proof of the facts but as a part of the information upon which the physician based his diagnosis and treatment, if any." (*Kelley* v. *Bailey, supra*, at p. 738.) In the present case the trial court, both in its remarks to counsel in ruling on objections and in its instructions to the jury, made clear that Doctor Mollenkopf's report was to be considered only for this limited purpose.

In support of their claim of error with respect to the admission of the portion of the hospital records containing Doctor Mollenkopf's report, defendants cite *People* v. *Williams*, 187 Cal.App.2d 355 [9 Cal.Rptr. 722], and *Hutton* v. *Brookside Hospital*, 213 Cal.App.2d 350 [28 Cal.Rptr. 774, 29 Cal.Rptr. 670]. These cases are distinguishable on the basis that in each

of them there was the use or attempted use of hospital records as proof of the facts stated therein.

■ The evidence of the fact that Springer suffered from delirium tremens was properly admissible on the issue of damages in view of Ruth's testimony that when he first examined Springer he found that Springer was suffering from brain damage. Under the state of the record it was proper for the jury to determine whether Springer had sustained brain injury as a result of the accident, whether the signs of brain injury were attributable to the effects of chronic alcoholism, or whether the brain injury was attributable to both the accident and the alcoholism. Our inquiry, then, is directed to whether Springer's history of alcoholism was relevant to the issue of liability, as contended by defendants who argue that such evidence was relevant to the issue whether Springer's fall was caused by the sudden movement of the truck or occasioned by a physical seizure resulting from delirium tremens.

In considering this contention we observe, initially, that defendants were allowed, over objection, to show that within a year before the accident Springer was warned by his superiors at Holly about drinking before coming to work. Plaintiffs contend that this evidence prejudiced them because it had the effect of discrediting and impeaching Springer. ■ The rule is clearly recognized in this state and the majority of other jurisdictions that evidence of a long history of intoxication is inadmissible for the purpose of impeaching credibility unless it is clearly shown that the intoxication occurred contemporaneously with the events about which the witness is testifying. (*People* v. *Stanley,* 206 Cal.App.2d 795, 798 [24 Cal.Rptr. 128, 8 A.L.R.3d 745]; *Wilson* v. *Manduca,* 233 Cal.App.2d 184, 188 [43 Cal.Rptr. 435]; *People* v. *Alfonso,* 77 Cal.App. 377, 380 [246 P. 818]; Witkin, Cal. Evidence (1958) § 228; McCormick on Evidence, § 45, p. 98;[8] see Evid. Code, § 787 ("evidence of specific instances of [a witness'] conduct relevant only as tending to prove a trait of his character is inadmissible to attack or support the credibility of a witness.").) Accordingly, the mere fact of chronic alcoholism is not provable on credibility. (*People* v. *Stanley, supra,* at pp. 798-799.) ■ In the present case it is conceded that Springer consumed no alcohol before coming to work on the morning of the accident. Moreover, the record is devoid of any evidence that Springer was under the influence of alcohol at the time of the happenings which he reported in his testimony or at the time he testified. Accordingly, his general habit of intemperance did not amount to competent impeachment evidence.

Adverting to the record we observe that, although defendants insist that

---

[8]See annotation in 8 A.L.R.3d 745, 750.

evidence of Springer's drinking habits was relevant to the issue of liability, this evidence was utilized to disparage Springer's credibility. The closing argument made by defendants' counsel contains pointed references to Springer's credibility on the basis of his habitual intemperance. The over-all proposition which emerges from these references is that Springer was a chronic alcoholic as established by Doctor Ruth's testimony concerning Doctor Mollonkopf's report; that in spite of this medical evidence Springer still claimed that he only drank "one or two highballs" a day; that although Springer had a fine work record his employer was lenient with him with respect to his drinking problem; and that, consequently, when the accident occurred, Springer, desiring to keep his job and being aware of the work-men's compensation benefits available to an employee injured through the acts of a third party, decided to say that defendants had jerked the truck instead of admitting his alcoholic condition caused him to fall.

Under the circumstances it is apparent that a purpose in eliciting Spring-er's past history of intemperance was to demonstrate to the jury that because Springer was a chronic alcoholic he was not credible and, therefore, could not be believed as to his version of the accident. There is no evidence that Springer was intoxicated or suffering from delirium tremens at the time of the accident.[9] Accordingly, the evidence of Springer's drinking habits which went beyond its relevancy to the issue of damages had the effect of estab-lishing by indirection that the accident did not occur as a result of a sudden movement of the truck.

We perceive this error to be prejudicial notwithstanding the trial court's instruction that statements made by a patient to a physician are to be considered only for the limited purpose of showing the information upon which the physician based his opinions and not as evidence of their own truth. In connection with this instruction the court also instructed that with respect to his physical or mental condition the patient's statements consti-tuting an admission of a fact or facts adverse to his interests could be considered by the jury as evidence of the truth of the matter stated. This instruction, when coupled with the instruction that evidence on the subject of alcohol or alcoholism received by the court was to be considered and weighed by the jury as all other evidence under the court's instructions, could only have the effect of confusing the jury in its consideration of the

---

[9]Reimers testified on cross-examination that Springer appeared normal immediately before the accident. All that the record discloses with respect to delirium tremens is that Springer was suffering from this condition shortly after the accident. No expert testimony was adduced indicating that Springer was suffering from delirium tremens at the time or on the day of the accident.

evidence of Springer's chronic alcoholism and permitting the jury to consider Springer's credibility on the basis of such intemperance.

The judgment is reversed.

Sims, J., and Elkington, J., concurred.