[Crim. No. 11764. First Dist., Div. Two. Jan. 31, 1974.]

THE PEOPLE, Plaintiff and Appellant, v.
DONALD L. IOCCA et al., Defendants and Respondents.

COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Robert R. Granucci and Jerome C. Utz, Deputy Attorneys General, for Plaintiff and Appellant.

Thomas A. Purtell and Roger L. Gambatese for Defendants and Respondents.

OPINION

**TAYLOR, P. J.**—This is an appeal by the People from an order granting defendants' motion to set aside the information (Pen. Code, § 995) on grounds that the preliminary hearing magistrate abused his discretion by denying a continuance to permit defendants to look for and produce the informer-participant to substantiate their entrapment defense. The appeal raises a question of first impression as to whether Penal Code section 1050 applies to preliminary examinations. We have concluded that it does not and that the order granting the 995 motion should be affirmed.

The record reveals the following chronology of pertinent facts: On January 18, 1973, the preliminary examination against respondents, Iocca, Monson, and their codefendant, Swing,[1] commenced before the magistrate of the Berkeley-Albany Municipal Court, on a charge of a violation of Health and Safety Code section 11912[2] (sale of a dangerous drug). Respondent Iocca was also charged with section 11530 (possession of marijuana). Swing, who was in custody, was represented by the public defender, and the other defendants by separate private counsel retained a few days before the examination.

The testimony of the chief prosecution witness, State Narcotics Agent Beckstead, established that before noon of January 5, 1973, Beckstead was introduced to an undercover agent (subsequently identified as Ed Kirby) by officers of the City of Woodland Police Department. Kirby had

---

[1]Swing is not involved in this appeal.

[2]At the time of the filing of the information, former Health and Safety Code section 11912 providing for increased punishment for subsequent sale and transportation offenses was in effect. The section was repealed and its provisions reenacted into the California Uniform Controlled Substances Act, Statutes of 1972, chapter 1407, effective March 3, 1973.

arranged a meeting with respondents at a house at 412-14th Street, Davis, to arrange a purchase of LSD. About noon, Beckstead saw Kirby and respondents come out of the house in Davis and proceed to a 1972 Pinto automobile with the license BENNET, driven by Monson.

The Pinto was followed from Davis to Berkeley by Beckstead (who was alone in one state vehicle) and State Narcotics Agent Gorman, who was in a second state vehicle with Detective Whittenberg and Officer Constant of the Woodland police.

About 2:30 p.m., the vehicles arrived in Berkeley and parked in the lot of the Co-op Market at 1414 University Avenue. Iocca went for a brief walk and returned. After a conversation with Beckstead concerning the purchase of LSD, respondent Iocca remained in the state vehicle, while respondent Monson and Kirby drove to and entered a house at 583 Colusa. About half an hour later when Monson and Kirby returned to the agreed meeting place, the parking lot of the Travelodge Motel on University Avenue, Swing was with them. Monson came over to the state vehicle and gave Beckstead about 100 tablets. The arrest ensued; during a search following the arrest, marijuana was found on Iocca.

None of the witnesses at the preliminary could state how Kirby obtained the confidence of respondents. Kirby was introduced to Beckstead on January 5, 1973, by members of the City of Woodland Police Department. Officer Constant of the Woodland Police Department had no knowledge of the preliminary contacts between Kirby and respondents.

On the first day of the preliminary hearing, during the cross-examination of Beckstead, Iocca's counsel elicited Kirby's name. This was the first disclosure of the name of the undercover operative to respondents or to defense counsel. As indicated above, Beckstead professed no knowledge of Kirby's background as he had met him for the first time on the morning of January 5 and had no knowledge of Kirby's whereabouts. When asked whether he knew Kirby's address, Beckstead replied that he did not but that he surmised that Kirby could be reached through the Woodland Police Department.

Beckstead was the only prosecution witness at the first day of the preliminary hearing. At the conclusion of Beckstead's testimony, defense counsel Gambatese moved for discovery of the police reports of the Woodland Police Department and the Bureau of Narcotics Enforcement. The deputy district attorney stated that the only report that he had was that of the Berkeley Police Department; the magistrate ruled that the only

allowable discovery would be of those reports which the district attorney had. The prosecution requested that preliminary be put over until Tuesday, January 23. Swing's attorney objected, as his client was in custody, and Monday, January 22, was the tenth day allowed for a timely preliminary by Penal Code section 859b. Thereafter, the magistrate recessed the preliminary until Monday, January 22.

During the three days that intervened between the first (Thursday-1/18) and second (Monday 1/22) days of the preliminary hearing, Mr. Purtell, counsel for Monson, acting for both his client and Iocca, attempted to obtain a Woodland Police Department report and was told that there was no such report.

Upon resumption of the preliminary hearing, other witnesses were called, including Agent Gorman, who also first saw Kirby in the company of two Woodland police officers in Davis on the morning of January 5, and also did not know Kirby's whereabouts. When Officer Constant was recalled, he testified that he had no idea of the present whereabouts of Kirby and also had not seen him prior to the day of the arrest.

At the close of the testimony on January 22, defense counsel for Monson and Iocca moved for a continuance of the preliminary examination for the purpose of finding Kirby to present the defense of entrapment at the preliminary hearing.

The magistrate stated that he understood the point of the defense in asking for the continuance but indicated his own reluctance to grant the continuance because it would extend the time of Swing's custody. The magistrate also stated he wanted to keep an open mind on the entrapment issue and indicated that he was reluctant to deprive any defendant of the chance to have Kirby testify at the preliminary hearing.

In denying the motion for continuance, the magistrate gave his reasons as follows: 1) the case cannot be split up as to defendants; it would get "hopelessly separated and we need for obvious reasons . . . to keep this [case] together" at the preliminary hearing state of the proceeding; 2) he believed he was bound by the 10-day time limit of Penal Code section 859b that governs a defendant in custody when rights of codefendants conflict under the circumstances.

The magistrate further stated that if none of the defendants were in custody, he would grant the continuance for a couple of weeks for the purpose of allowing the defense to locate Kirby but could not do so with Swing in custody. The magistrate did not ask for an offer of proof; neither he nor the prosecution question the diligence of defense counsel.

■ On appeal, the People contend that the superior court erred in overruling the preliminary hearing magistrate's ruling on the request for a continuance to locate Kirby. The People maintain that the magistrate's ruling was proper as respondents failed to comply with the statutory requirements for a continuance (e.g., due diligence, good faith and offer of proof; Pen. Code, § 1050, set forth, so far as pertinent, below).[3]

Preliminarily, we note that since these matters were not raised by the prosecuting attorney at the preliminary hearing, we could well consider that they were waived (*People* v. *Stanley*, 206 Cal.App.2d 795 [24 Cal. Rptr. 128, 8 A.L.R.3d 745]). However, we deem it our duty to discuss and dispose of the People's contention as it is one of first impression.

The People have cited no case or other authority holding that the requirements of Penal Code section 1050 apply to preliminary hearings. The statute, by its terms, clearly and expressly refers to "the trial" and is (not without purpose) located in the title of the Penal Code relating to trials (pt. 2, tit. 6) rather than the part pertaining to preliminary hearings (Pen. Code, pt. 2, tit. 3, §§ 859b-870).

The only pertinent case, *Jennings* v. *Superior Court*, 66 Cal.2d 867 [59 Cal.Rptr. 440, 428 P.2d 304], does not support the People's contention. *Jennings*, without any reference to Penal Code section 1050, held that at the preliminary hearing the defendant is entitled to present an affirmative defense, and should be granted a continuance to obtain the attendance of a material witness. While, as *Jennings* intimates (at p. 877), there are certain similarities in the duties of a preliminary hearing magistrate and a trial judge, the differences between the purpose and effect of the proceedings are significant. As set forth in *People* v. *Elliot*, 54 Cal.2d 498, 504 [6 Cal.Rptr. 753, 354 P.2d 225] (quoted with approval in *Jennings, supra,* at p. 880): "The preliminary examination is not merely a pretrial hearing. 'The purpose of the preliminary hearing is to weed out groundless or unsupported charges of grave offenses, and to relieve the accused of the degradation and the expense of a criminal trial. Many an unjustifiable prosecution is stopped at that point where the lack of probable cause is clearly disclosed.' (*Jaffe* v. *Stone,* 18 Cal.2d 146, 150. . . .)"

---

[3]"No continuance of a criminal trial shall be granted except upon affirmative proof in open court, upon reasonable notice, that the ends of justice require a continuance. . . . No continuance shall be granted for any longer time than it is affirmatively proved the ends of justice require. Whenever any continuance is granted, the facts proved which require the continuance shall be entered upon the minutes of the court or, in a justice court, upon the docket."

Clearly, the rigid requirements of a statute like Penal Code section 1050, should not be applied to the shorter, less expensive and far less complex proceedings of the preliminary hearing where (unlike a trial), a defendant is not in jeopardy. After the granting of a section 995 motion, as in the instant case, the prosecution is free to file another accusatory pleading. We hold, therefore, that Penal Code section 1050 cannot be reasonably applied to a preliminary hearing.

Even assuming that the section or its due diligence requirements apply, the record here clearly indicates that this was not the ground for the denial of the continuance. The record indicates that the preliminary hearing magistrate denied the continuance because he felt compelled not to sever the proceedings and to weigh the factors in favor of the codefendant Swing, who was in custody[4] and would not waive time beyond the statutory period of 10 days.

██ Contrary to the People's contentions, there is nothing in the record to indicate any lack of good faith or due diligence by counsel for respondents. In fact, the superior court made an implied finding to this effect when it referred specifically to the fact that respondents Iocca and Monson had had "new counsel" at the time they requested the continuance, whereas, defendant Swing had had the same public defender for some time, and concluded that for this reason, the municipal judge should have granted a continuance to respondents, regardless of Swing's situation.

All of the evidence adduced at the preliminary indicated the potentiality of a valid entrapment defense. None of the prosecution witnesses who testified were able to establish the reliability of Kirby or knew his address. Kirby's testimony would not necessarily have been merely cumulative but could have borne directly on respondents' alleged affirmative defense of entrapment. ██ As stated in *Jennings* v. *Superior Court, supra,* 66 Cal.2d 867, at pages 875-876: " 'While the determination of whether in any given case a continuance should be granted "normally rests in the discretion of the trial court" (*People* v. *Buckowski* (1951) 37 Cal.2d 629, 631 [233 P.2d 912]), that discretion may not be exercised in such a manner as to deprive the defendant of a reasonable opportunity to prepare his

---

[4]For reasons that do not appear on the face of the record, Swing's motion for release on his own recognizance was also denied, and unlike respondents, he was apparently unable to make bail.

defense. . . .' " ▇▇▇ It follows that respondents were deprived of a substantial right[5] by the denial of a continuance at the preliminary hearing.

The order appealed from is affirmed.

Kane, J., and Rouse, J., concurred.

---

[5]A valid defense of entrapment would also be relevant on the suppression of the evidence on the possession of the marijuana count against respondent Iocca (*People* v. *Allen,* 214 Cal.App.2d 136 [29 Cal.Rptr. 455]).