Filed 3/19/14  Perello v. Jiminez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| KAROL PERELLO,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MOISES JIMENEZ,<br><br>    Defendant and Appellant. | B246859<br><br>(Los Angeles County<br>Super. Ct. No. BC440129) |

        APPEAL from an order of the Superior Court of Los Angeles County.  William A. MacLaughlin, Judge.  Affirmed.

        Law Offices of Gregory J. Lucett and Elizabeth Alvarez; Pollack, Vida & Fisher, Michael M. Pollak and Daniel P. Barer for Defendant and Appellant.

        Zelner & Karpel and Barry S. Zelner for Plaintiff and Respondent.

_____

Moises Jimenez appeals from an order granting a motion for new trial following a jury verdict finding him not negligent in a traffic collision with Karol Perello. We affirm.

**FACTS**

On September 17, 2009, Perello crashed her Mitsubishi Mirage into Jimenez's Honda at the intersection of Garnet Street and Euclid Avenue in Los Angeles. Perello was travelling southbound on Euclid, which does not have any traffic control restrictions at that intersection, and Jimenez was travelling westbound on Garnet, which has a stop sign at that intersection. It was 8:30 p.m. on a clear night. A streetlight provided illumination for the intersection. Perello was driving home from Costco with her 12-year old son. She lived a block away. Jimenez was visiting his brother, who also lived close by. Elena Nunez was a passenger in Jimenez's car and was the common law wife of another of Jimenez's brothers. Perello and her son suffered injuries as a result of the crash and Perello's car was deemed a total loss.

Perello sued Jimenez on June 22, 2010. The matter was brought to a jury trial on October 18, 2012. Perello testified that she noticed a black SUV driving westbound on Garnet as she approached the intersection. She braked and honked her horn. She did not notice Jimenez's car until it was right in front of her. She attempted to brake and swerve left to avoid a collision. Her right front bumper hit Jimenez's front passenger door. Perello's testimony at her deposition differed from her trial testimony. At the deposition, she testified that Jimenez first hit her on the front side of her bumper, which flew over the car and landed on the back. She then skidded to avoid him hitting her again and her car collided with his. At trial, Perello admitted her deposition testimony regarding Jimenez's car hitting hers was "incorrect."

Jimenez testified that he came to a full stop before entering the intersection. He noticed a minivan waiting at the opposite stop sign to make a left turn. After the minivan made the turn and he had looked both ways, Jimenez proceeded into the intersection, accelerating to 15-20 miles per hour. He denied seeing a black SUV. He also did not see Perello's car until it collided with his and believed that she may not have had her headlights on.

2

Witnesses arrived on the scene almost immediately. Perello's sister, Karen Bueno, lived eight houses away and used a camera phone to take accident-scene photographs. Jimenez's brother, Jose Jimenez, also arrived. Emergency medical personnel and police officers arrived shortly afterwards and obtained statements from Jimenez and Perello. Perello indicated that she was "okay" but expressed concern for her son, who was "not okay" and suffered from neck pain, a large contusion across his chest and rapid swelling in both legs. Perello took her son to Kaiser Permanente emergency room in Baldwin Park, where she began to experience neck pain, her feet began to swell and her body stiffened up. Both of her arms began tingling from shoulder to thumb. Perello presented testimony from medical experts regarding her injuries as well as from an accident reconstruction expert.

The jury returned a verdict for Jimenez on October 31, 2012, finding that he was not negligent. On November 15, 2012, Perello filed a motion for new trial on grounds of irregularity of the proceedings, misconduct of the jury, and insufficiency of the evidence along with a motion for judgment notwithstanding the verdict. The trial court granted the motion for new trial, but denied the motion for judgment notwithstanding the verdict. The trial court reasoned that a new trial was warranted on the grounds of insufficiency of the evidence and irregularity in the proceedings. Jimenez timely appealed.

## DISCUSSION

Jimenez asserts the trial court abused its discretion when granting the new trial motion. He contends the trial court failed to adequately set forth its reasons for granting the new trial motion. Further, that there were no irregularities in the proceedings because the attorney misconduct which the trial court cited was not misconduct and not prejudicial. We disagree.

## I.     Standard of Review

A new trial allows for the re-examination of an issue of fact after a trial and decision by a jury. (Code of Civil Proc., § 657.) Because granting a new trial simply allows another trial and does not presume a victory for any one side, "the judge has much wider latitude in deciding the motion . . . which is reflected in an abuse of discretion

3

standard when the ruling is reviewed by the appellate court.  A new trial motion allows a judge to disbelieve witnesses, reweigh evidence and draw reasonable inferences contrary to that of the jury, and still, on appeal, retain a presumption of correctness that will be disturbed only upon a showing of manifest and unmistakable abuse." (*Fountain Valley Chateau Blanc Homeowner's Assn. v. Department of Veterans Affairs* (1998) 67 Cal.App.4th 743, 751.)  Because an order for new trial does not finally resolve the merits of a case, a trial court in effect sits as a "thirteenth juror" when ruling on it, with discretion to reject the jury's verdict.  (See, e.g., *Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 507.)  An order granting a new trial under Code of Civil Procedure section 657 " 'must be sustained on appeal unless the opposing party demonstrates that no reasonable finder of fact could have found for the movant on [the trial court's] theory.' [Citation.]" (*Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 412 (*Lane*).)

## II.     Sufficiency of Evidence

When a trial court orders a new trial on insufficiency of the evidence grounds, the court's order is reviewed on appeal for an abuse of discretion.  (*Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387.)  As explained by the Supreme Court:  "The determination of a motion for a new trial rests so completely within the [trial] court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears.  This is particularly true when the discretion is exercised in favor of awarding a new trial, for the action does not finally dispose of the matter.  So long as a reasonable or even fairly debatable justification under the law is shown for the order granting the new trial, the order will not be set aside." (*Ibid.*)  " '[T]he presumption of correctness normally accorded on appeal to the jury's verdict is replaced by a presumption in favor of the order [granting a new trial].' [Citation.]" (*Lane, supra,* 22 Cal.4th at p. 412.)

Code of Civil Procedure section 657, subdivision (7) requires the trial court to "specify the ground or grounds upon which [a new trial] is granted and the court's reason or reasons for granting the new trial upon each ground stated."  The trial court's statement of reasons directs the appellate court's attention to the aspects of the record

4

which support the order and such reasons are sufficient where there is a reasonable basis in the record for trial judge's decision. (*Romero v. Riggs* (1994) 24 Cal.App.4th 117, 124.)

Here, the trial court issued this statement of reasons:

"The jury answered the first question on the verdict form stating that the defendant was not negligent. The evidence relating to liability is recited in plaintiff's motion in more detail but, in essence, it disclosed that plaintiff's vehicle was proceeding on a through street at the time her vehicle collided with defendant's vehicle which was crossing that street from a stop sign on an intersecting street. Mr. Singh [the accident reconstructionist] testified that plaintiff's speed at impact was 19 to 20 miles per hour and that defendant's vehicle was traveling at 20.5 to 21 miles per hour at impact. This testimony was uncontradicted by any other expert and was essentially consistent with the testimony of the two parties. Defendant testified that he had stopped at the stop sign and had looked in the direction from which plaintiff was approaching and did not see her. [Defense] counsel argued that plaintiff's headlights were not on leading up to the accident but appears to have based his argument on the fact that defendant did not see plaintiff's vehicle before or as he was crossing the intersection and/or on plaintiff's testimony that she did not see defendant's vehicle until the impact. There was no witness who testified that the plaintiff's lights weren't on and there were photos of plaintiff's vehicle at the scene after the accident with its lights illuminated. Further, photos of the scene disclose that the area has reasonable artificial lighting during the hours of darkness. Because the defendant was entering the street from a stop controlled intersecting street, and had a duty to yield to traffic that constituted an immediate hazard, and there was no evidence of speed on the part of plaintiff or other conduct that would excuse the conduct of defendant, the court finds the evidence was insufficient for a jury to find that defendant was not negligent."

We conclude the record provides a reasonable basis for the trial court's order. Vehicle Code section 21802 requires a driver approaching a stop sign at the entrance of an intersection to yield the right-of-way to any approaching vehicles until he can proceed with reasonable safety. Violation of Vehicle section 21802 may constitute negligence as a matter of law. (*See Clinkscales v. Carver* (1943) 22 Cal.2d 72, 75-76 [addressing former Vehicle Code, § 552, an earlier version of section 21802].) Here, the trial court relied on testimony from Jimenez, Perello, and the accident reconstruction expert. As noted by the trial court, there was no indication that it was too dark to see Perello, that she did not have her headlights on, that she was speeding through the intersection, or any "other conduct that would excuse" Jimenez's failure to yield to Perello as required under Vehicle Code section 21802. As a result, Jimenez was required to stop and yield to any cross traffic. He did not.

Jimenez argues that the trial court's findings "did not undermine the essential assertions that form the basis of the jury's verdict." According to Jimenez, "the trial court accepted Jimenez's testimony that he stopped at the sign; that he looked in Perello's direction; and that he did not see Perello. And the court did *not* find that Jimenez did not look with proper care, or that he did not see all that he should have seen. [Citations.]" Instead, "[u]nder subdivision (b) [of section 21802], if a driver stops at a stop sign, looks, does not see oncoming traffic that provides an immediate hazard, and proceeds into the intersection, the mere fact an accident occurred is not enough to raise a presumption the driver was negligent."

Jimenez mischaracterizes the trial court's finding. The trial court merely stated that Jimenez testified he stopped at the stop sign and looked in Perello's direction but did not see her. There is no indication the trial court "accepted" this testimony. Rather, the court's conclusion that there was no conduct that would "excuse" his failure to yield is equal to a finding that Jimenez did not satisfy the requirements of Vehicle Code section 21802. That Jimenez stopped and looked in Perello's direction certainly could create an inference that he was not negligent. However, the record also establishes that Perello's lights were on, she was not speeding, and she had the right-of-way. Moreover, the

6

accident reconstruction expert expressed doubt that Jimenez's Honda was capable of reaching the speed at impact, which was 19 to 20 miles per hour, from a full stop given the short distance it traveled before the accident. These additional facts create an inference that Jimenez was negligent, either because he did not come to a full stop or otherwise negligently failed to see Perello. On this record, a reasonable finder of fact could have found for Perello. (*Lane, supra,* 22 Cal.4th at p. 412.) " 'An abuse of discretion cannot be found in cases in which the evidence is in conflict and a verdict for the moving party could have been reached . . . .' " (*Ibid.*)

We reject Jimenez's argument that the trial court should have expressly found he did not look with proper care or that he did not see all that he should have seen. Citing to *Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 634, Jimenez contends that we may rely only on the words in the statement of reasons to uphold the trial court's order. We have and find the trial court's statement of reasons was sufficient to support its ruling. *Oakland Raiders* does not require a different finding. There, the high court "*address[ed] a single, narrow issue*: the standard of review—whether abuse of discretion or independent review—when, as here, a trial court grants a new trial on the ground of jury misconduct and properly specifies the ground for granting the motion but does not provide a statement of the reasons for granting the new trial on that ground." (*Id.* at pp. 635-636.) In this case, where the trial court has specified the grounds for granting the motion and the reasons in support thereof, we properly applied the abuse of discretion standard of review.

### III. Attorney Misconduct

The trial court found, as an additional basis for a new trial, an irregularity in the proceedings. We find that this too provides a basis for the trial court's order granting the motion for new trial. Specifically, the trial court found that a question posed by defense counsel prevented Perello from receiving a fair trial. Perello's original attorney, Stan Freeman, was called to explain to the jury a mistake made in answering an interrogatory. Freeman testified that a secretary mistakenly put in the firm's standard answer rather than Perello's answer in response to a form interrogatory asking if Perello had any

7

photographs of the accident scene. The answer stated that Freeman's investigator took ten photographs shortly after the accident. In fact, the photographs had been taken by Perello's sister and possibly one other friend. Perello signed a verification of the responses without spotting the mistake. During cross-examination, defense counsel asked Freemen whether he had been "advised by any detective from the L.A.P.D. that your client was being investigated for fraud[.]" Perello's trial counsel immediately objected and moved to strike. The objection was sustained and the motion to strike was granted. The court instructed the jury to disregard it, stating that "[i]t is not evidence in the case. It is a statement of counsel, and statements of counsel are not evidence."

At the break, Perello's counsel requested a mistrial "contingent on my client being reimbursed for all her costs including expert fees as well as my time." The trial court informed him that a mistrial motion could not be made contingent on the court summarily granting sanctions against defense counsel. Instead, the right to sanctions would be determined upon a post-mistrial motion. Perello's counsel withdrew his request.

In ruling on the motion for new trial, the court found, "[a]dditionally, counsel for the defendant posed a question to an attorney, a witness in the case, who had initially represented plaintiff in this action, which asked the attorney, in essence, whether it was true that he had been contacted by a police agency that was investigating plaintiff for insurance fraud. There was no evidence ever offered of any such investigation, any findings and, most importantly, of any adjudication of a fraud. This question was asked without any forewarning and the court finds that the asking of the question, and the wording thereof, was misconduct and constitutes an irregularity in the proceedings of an adverse party. The motion for a new trial is, therefore, granted on this additional ground as the court finds that such statement/accusation sufficiently permeated the proceedings as to cause substantial prejudice to plaintiff's case."

" 'Misconduct of counsel as a ground for new trial presents a matter primarily committed to the trial court. [Citation.] The judge who presides over the trial, who hears the testimony and the arguments, and whose own experience gives him a fine sense of the general atmosphere of trial proceedings, is in a far better position than appellate judges to

8

evaluate the effect of disputed argument.' " (*Garcia v. Rehrig Internat., Inc.* (2002) 99 Cal.App.4th 869, 874 quoting *Henninger v. Southern Pacific Co.* (1967) 250 Cal.App.2d 872, 881.)

In this case, the Honorable William MacLaughlin, a veteran trial judge, presided. He observed, "It's not uncommon at trials that counsel will ask questions that either broach the subject that shouldn't . . . be addressed or will ask questions in a way that is improper, and that's why we have evidentiary objections and questions that were asked by court, but I can't imagine, at the moment, as I'm sitting here, something that would be more prejudicial to someone's claim than to come out—and it really was the way the question was asked, which I do remember was asked in such a way that it really was a statement . . . This was a statement of fact to the jury, and to state in front of the jury that the Plaintiff was subject to an investigation for insurance fraud permeates the case."

Considering the wide discretion accorded to a trial court in ruling on a new trial motion, we defer to Judge MacLaughlin's considerable experience and find his order granting a new trial was not a "manifest and unmistakable abuse of discretion." (*Jiminez v. Sears, Roebuck & Co., supra,* 4 Cal.3d at p. 387.) Under the circumstances, it is apparent that a purpose of the question was to demonstrate to the jury that Perello was not credible and had previously committed insurance fraud to imply that she was committing insurance fraud in this case. Such evidence is inadmissible on a number of grounds. First, as the trial court noted, there was no evidentiary basis for the assertion, and was thus entirely irrelevant and impermissibly directed the jury to speculate. Second, under Evidence Code section 1101, subdivision (a), which provides "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." Evidence Code section 787 also prohibits the admission of instances of specific conduct not resulting in a felony conviction which tend to prove a trait of character to attack or support the credibility of a witness. (*Springer v. Reimers* (1970) 4 Cal.App.3d 325, 339; *People v. Wagner* (1975) 13 Cal.3d 612, 619 [questions regarding specific acts of misconduct which did not result

9

in prior felony convictions were inadmissible].)  Courts have held such character evidence to be of slight probative value, but with great potential for prejudice, confusion, and consumption of time.  (*Bowen v. Ryan* (2008) 163 Cal.App.4th 916, 923.)  We accept Judge MacLaughlin's conclusion that the question was improper and severely prejudiced Perello.

Jimenez contends that his trial counsel's question did not amount to misconduct because it only occurred once and the questioning was proper.  According to Jimenez, Freeman was called to testify as a character witness for Perello and thus he was entitled to impeach him with evidence of Perello's previous conduct.  We disagree.  "The rationale for permitting the prosecution to cross-examine a defendant's good-character witness as to whether or not he has heard rumors or reports of defendant's arrest or conviction of other offenses inconsistent with the character trait testified to, is that such cross-examination tests and exposes weaknesses in the witness' knowledge of the reputation."  (*People v. Hurd* (1970) 5 Cal.App.3d 865, 879; *People v. Marsh* (1962) 58 Cal.2d 732, 745.)  Obviously, the opinion of a good-character witness must have some basis, and the prosecution must be permitted to cross-examine to test that basis and bring into question the validity of the opinion.  (*People v. Hurd*, *supra,* 5 Cal.App.3d at p. 880.)  However, Freeman was not called to present his opinion of Perello's reputation for good character.  He was called to explain a mistake in answering an interrogatory.  Therefore, there was no basis to permit Jimenez to question Freeman on an unsubstantiated allegation that there was an investigation into her veracity without prior notice to the trial court or opposing counsel.

The fact that the question was asked only once does not render it inherently harmless.  As discussed above, the trial court is in a far better position to evaluate the effect of a single question on a proceeding.  Here, the trial court determined that the question was sufficiently prejudicial to warrant a new trial.  The trial court did not abuse its discretion in doing so.  The cases cited by Jimenez do not allow us to ignore the standard of review here.  These cases do not stand for the proposition that a brief mention of an improper subject cannot reasonably be deemed prejudicial in every case.  Instead,

10

the court in each of these cases found there was no prejudice within the context of the entire record.  (*Garcia v. ConMed Corp.* (2012) 204 Cal.App.4th 144, 160 [" 'Each case must ultimately rest upon a court's view of the overall record . . .' "]; *Bell v. Bayerische Motoren Werke Aktiengesellschaft* (2010) 181 Cal.App.4th 1108, 1112; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 802 ["Examining the entire case, including the evidence adduced . . ."].)

Lastly, Jimenez argues "[t]he trial court should not have permitted her to renew her new trial request after the verdict was against her."  Relying on *Causey v. Cornelius* (1958) 164 Cal.App.2d 269 (*Causey*), Jimenez contends Perello waived her chance to request a mistrial by withdrawing the request after the trial court advised it would not grant a contingent motion.  *Causey* does not support Jimenez's position.  In *Causey,* the trial court granted defendant's motion for a new trial on the theory that counsel for plaintiff improperly and prejudicially injected and emphasized the question of insurance when he examined a defense witness.  On appeal, the court reversed the order granting the new trial because the defense made no objection, no motion to strike, no motion for a mistrial, and no request for a cautionary instruction.  (*Id.* at pp. 282-283.)  All of these things were done by Perello's counsel in this case.  There was no waiver.

## IV.   Request for Sanctions

Perello requests sanctions against Jimenez "for pursuing an appeal that is 'frivolous' or 'taken solely for delay.' "  Sanctions may only be sought through a separate motion pursuant to California Rules of Court, rule 8.276(b)(1) and not in the respondent's brief.  (*Leko v. Cornerstone Bldg. Inspection Service* (2001) 86 Cal.App.4th 1109, 1124.)  The request for sanctions is therefore denied.

11

## DISPOSITION

The order granting the motion for new trial is affirmed.  Respondent is awarded costs on appeal.

BIGELOW, P. J.

We concur:

FLIER, J.

GRIMES, J.